GREEK-AMERICAN SPONGE COMPANY, Respondent, vs. RICH-
ARDSON DRUG COMPANY, Appellant.

*February, 24—March 14, 1905.*

*Interstate commerce: Sale of goods in original package: Shipment for inspection: Right of foreign corporation not authorized to do business in this state.*

1. Interstate commerce conducted by corporations organized within different states stands upon the same footing under the federal constitution as interstate commerce conducted by individuals.
2. A contract for the sale of a lawful article of commerce in its original package while it was an article of interstate commerce is not governed by sec. 1770b, Stats. 1898, prescribing conditions upon which foreign corporations may transact business in this state and depriving them in certain cases of the right to recover upon contracts made before compliance with its provisions.
3. By the terms of an agreement for the sale of a bale of sponges by plaintiff, a foreign corporation, to defendant, a domestic corporation, two bales were to be shipped from Chicago to Milwaukee for inspection and defendant was to have the right to choose one or to reject both. The bales were shipped accordingly, with other goods, to plaintiff's agent in Milwaukee, who at defendant's request opened the bales and examined their contents and then, after refastening them as they were before, delivered one to defendant. *Held*, that the goods delivered had not lost their character as articles of interstate commerce, and that the right of plaintiff to enforce payment therefor was not affected by sec. 1770b, Stats. 1898.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

This is an action to recover the amount due for goods and merchandise which plaintiff claims to have sold defendant in the month of June, 1903. The cause was tried by the court without a jury. From the facts found by the court it appears: The plaintiff was at the time of the transactions in controversy a foreign corporation organized and existing under the laws of the state of Illinois, and was engaged in the business of

buying and selling sponges at the city of Chicago. It has not filed its articles of association with the secretary of state of Wisconsin, as required by sec. 1770b, Stats. 1898, and the acts amendatory thereof. Defendant is a corporation organized under the laws of this state, engaged in the drug business at the city of Milwaukee, Wisconsin.

As to the sale of sponges in question, the following negotiations and dealings took place: E. L. Leser, residing at Milwaukee, as plaintiff's traveling salesman for this and other territory, negotiated with defendant's representative in the early part of June, 1903, to sell it some goods. Defendant informed him, through its president, that it wished to purchase a bale of a certain kind and quality of sponges, which were offered at the regular market price. It was arranged between the parties that plaintiff should select from its stock at Chicago a couple of bales of the specified goods and ship them to Milwaukee for defendant's inspection, and defendant was to have the privilege of accepting one and of rejecting one or both of them. Plaintiff's agent then issued in his own name a written order on plaintiff, at Chicago, for the two bales of sponges, with instructions not to ship, but to hold them for his inspection. About June 24th thereafter, plaintiff, under this order, shipped two bales of those goods, with other goods, to Milwaukee, Wisconsin. These goods were consigned to plaintiff's traveling salesman, by whom they were received and placed in the Plankinton Hotel for defendant's inspection in the bales. When defendant's officers were requested to inspect them at the hotel, they informed plaintiff's agent who had them in charge of their inability to do so, and requested him to select and send the bale of best value to its place of business for examination; if suitable it would keep it, and if not it would send it back. Thereupon plaintiff's agent opened the bales at the hotel, examined the goods, then put back what he had taken out and closed the bales as they were before, and delivered the one selected by him to defend-

ant. He then made out and transmitted to plaintiff another order for the goods so delivered. The goods were received by defendant, the bale opened and examined by soaking out one or two of the sponges, and apparently found to be all right.

Defendant at about this time received a bill or invoice from plaintiff, dated June 24, 1903, specifying the sale and delivery of the goods through its agent (naming him), also the kind, quality, and price of the goods, and the amount due therefor, with the statement: "All claims must be made within three days after receipt of goods." Plaintiff requested payment of the account, and, upon failure of payment, on August 12, 1903, drew on defendant through the bank for the amount by a draft, which was returned unpaid. Upon further request for payment, defendant, without further communication with plaintiff, neglected to do so, but on October 30, 1903, reshipped the bale of the unsold goods to plaintiff, and mailed it a statement giving the invoice of the goods as originally delivered by plaintiff to defendant, deducting therefrom the amount sold, which was the balance due plaintiff. Plaintiff refused to accept this reshipment and return of the property.

The court made the following specific findings: "That the size and quality of sponges can be ascertained by inspection after soaking them out, and defendant could and did ascertain the size and quality of the sponges by an inspection after opening the bale and soaking one or two of them out;" also, "that plaintiff made no warranty nor representation respecting the goods, other than is contained in these findings." The court concluded, as matter of law: (1) That the transaction amounted to a sale of the goods to defendant in the original package as shipped into the state; (2) that the goods, when so sold, were not mingled with, nor had they become a part of, the mass of property within this state; (3) that the plaintiff, up to the time it delivered the goods to defendant, was engaged in interstate commerce, and that plaintiff there-

fore had the right to make this sale as an incident to this transaction; (4) that in making this contract it did not violate sec. 1770*b*, Stats. 1898, and amendments thereof, because the transaction is exempt from the provisions of this section, as one pertaining to interstate commerce; (5) that plaintiff was entitled to judgment for the amount claimed under the sale.

This is an appeal from the judgment.

For the appellant there was a brief by *Edgar L. Wood,* and oral argument by *L. R. Worden.*

*C. T. Hickox,* for the respondent.

SIEBECKER, J.    The appellant urges exceptions to the court's finding to the effect that the bales of goods were in the custody of plaintiff's agent at the hotel in Milwaukee for the purpose only of giving defendant an opportunity to inspect them, to determine whether they were to be accepted or rejected by it under the contract of sale, and the further finding that the bale of goods, when delivered to defendant, was in the original package as transported from Chicago to Milwaukee.    The findings are excepted to upon the ground that they are inferences of fact not justifiable from the evidence adduced.    Plaintiff's agent, Mr. Leser, is the only witness testifying on this subject.    His evidence is that the two bales of goods, consigned in his name, were shipped to Milwaukee by plaintiff for the purpose of affording defendant the opportunity of inspecting them under the terms of the agreement theretofore made between the parties; that he received the two bales, with other goods, at Milwaukee, and transferred them to a hotel for the purpose of having them inspected by their customers for acceptance or rejection; and that if accepted he would deliver them to the purchasers; if rejected, they would be returned to the plaintiff at Chicago.    It appears that defendant's officers were unable to make the inspection, but directed plaintiff's agent to select the bale of best value of the two sent

for their inspection, deliver it at their place of business, and if it was satisfactory it would be retained; otherwise it would be returned. The evidence on this point of the transaction is that the agent cut the cords fastening the bales, for the purpose of examining the contents, which he did by taking out some sponges. He then put back all he had so taken out, refastened the bales as they were before opening them, and then selected the bale in question for defendant and delivered it at their place of business. This evidence clearly supports the finding of the trial court on this issue. It is to the effect that the sponges were shipped to Milwaukee in bales for the purpose of inspection by defendant, and that they were delivered and transferred to defendant in the original package as transported from Chicago to Milwaukee. We find no tenable grounds for the exceptions urged to these points.

It is further argued, upon the facts as found by the court, that these goods at the time of their delivery to defendant had lost their character as an article of interstate commerce by becoming mingled with and incorporated into the mass of property in this state. To sustain this contention it must appear that at some time after the goods arrived at Milwaukee and before they were delivered to defendant they were so dealt with as to exclude the inference that plaintiff held them for the purpose of consummating the transaction under the terms of the sale, and that this was part of the process of importing them from Chicago. It is apparent that the arrangement made between the parties at the first interview between plaintiff's agent and defendant's officer amounts to an agreement for a purchase and sale of a bale of sponges, subject to the condition that defendant, after inspecting the goods offered under the agreement, might reject them if not satisfactory. Whatever was done with the goods at Milwaukee before their actual delivery was necessary for the purpose of completing the transfer under the conditions of the agreement of sale, pursuant to which they were shipped. The opening of the bales

so as to permit an inspection of their contents for the purposes declared can in no sense be construed a dealing with them as merchandise in the market, whereby they were taken out of the process of transportation and thus became a part of the mass of property in the state. These acts were proper steps in the delivery of the property to the purchaser and therefore essential to the performance of the contract. The reasonable inference from these events is that the property was in no way diverted from the original purpose of the shipment, namely, to fulfil the agreement of the parties.

The question presented is, Does the transaction come within the protection of the federal constitution regarding interstate commerce? The fact that this transaction is one wherein the parties are corporations organized within different states can in no way affect the question, since the same protection is extended to commerce conducted by corporations as that by individuals. As stated in *Paul v. Virginia,* 8 Wall. 168, at the time this power was conferred upon Congress a large part of the world's commerce was carried on by well-known and noted corporations, and "this state of facts forbids the supposition that it was intended, in the grant of power to Congress, to exclude from its control the commerce of corporations. The language of the grant makes no reference to the instrumentalities by which commerce may be carried on. It is general, and includes alike commerce by individuals, partnerships, associations, and corporations." The facts before us show a course of dealing wherein a foreign corporation, as a dealer, has undertaken to enforce payment for goods which were transported to this state, delivered, and accepted by a purchaser, under an agreement, made in this state, providing that when the goods were delivered to the purchaser they might be rejected if not satisfactory. It is unquestioned in this case that respondent was engaged in interstate commerce while transporting the goods from Chicago, Illinois, to Milwaukee, Wisconsin; but it is urged that subsequent to

their arrival in Milwaukee and before their delivery to defendant they ceased to be an article of interstate commerce coming under the commerce clause of the federal constitution, and therefore the provisions of sec. 1770b, Stats. 1898, applied to the transaction had concerning them in Milwaukee, which resulted in a consummation of the sale, and that this renders the contract of sale nonenforcible by the plaintiff.

The extent of the power delegated to Congress to regulate commerce between the states, and to what extent transactions are deemed to be a step in such commerce, have been repeatedly considered by the federal supreme court. ˙In *Brown v. Maryland,* 12 Wheat. 419, it was declared that the extent of this power "is coextensive with the subject on which it acts, and cannot be stopped at the external boundary of a state, but must enter its interior," and that "sale is the object of importation, and is an essential ingredient of that intercourse of which the importation constitutes a part. It is as essential an ingredient, as indispensable to the existence of the entire thing, then, as importation itself. It must be considered as a component part of the power to regulate commerce." In the case of *Schollenberger v. Pennsylvania,* 171 U. S. 1, 18 Sup. Ct. 757, the court reviews the decisions upon this subject, and reiterates its adhesion to the rules enunciated in *Brown v. Maryland* and many subsequent cases, and declares that "in the absence of Congressional legislation, therefore, the right to import a lawful article of commerce from one state to another continues until a sale in the original package in which the article was introduced into the state." Among additional authorities on the subject are the following: *Robbins v. Shelby Co.* 120 U. S. 489, 7 Sup. Ct. 592; *Bowman v. C. & N. W. R. Co.* 125 U. S. 465, 8 Sup. Ct. 689, 1062; *Leisy v. Hardin,* 135 U. S. 100, 10 Sup. Ct. 681; *Lyng v. Michigan,* 135 U. S. 161, 10 Sup. Ct. 725; *Stockard v. Morgan,* 185 U. S. 27, 22 Sup. Ct. 576; *Caldwell v. North Carolina,* 187 U. S. 622, 23 Sup. Ct. 229; *Norfolk & W. R. Co. v. Sims,*

191 U. S. 441, 24 Sup. Ct. 151; *American Exp. Co. v. Iowa,* 196 U. S. 133, 25 Sup. Ct. 182; *Swift & Co. v. U. S.* 196 U. S. 375, 25 Sup. Ct. 276.

Within the rule of these adjudications it must be held that the contract of sale sought to be enforced by the respondent pertained to the sale of a lawful article of commerce in its original package while it was an article of interstate commerce. Under these circumstances the contract is exempted from the provisions of sec. 1770*b,* and plaintiff is not precluded from enforcing it, though, as a foreign corporation, it has failed to comply with the requirements of this law. The right of the state to prescribe the conditions upon which foreign corporations may carry on business within the state is undisputed and stands approved by the courts. When, however, such regulation imposes conditions which restrict them in their right, as foreign corporations, to make contracts pertaining to commerce between the states, then such legislation is an invasion of their constitutional right, under the provision which confers upon Congress the power to regulate such commerce, and such legislation is invalid to that extent. *Cooper Mfg. Co. v. Ferguson,* 113 U. S. 727, 5 Sup. Ct. 739; *Fritts v. Palmer,* 132 U. S. 282, 10 Sup. Ct. 93; *Crutcher v. Kentucky,* 141 U. S. 47, 11 Sup. Ct. 851.

These considerations dispose of the questions involved, and lead to the conclusion that the trial court properly awarded judgment in respondent's favor.

*By the Court.*—Judgment affirmed.