Loverin & Browne Company, Appellant, vs. Travis, Respondent.

*March 14—March 31, 1908.*

*Guaranty: Demand on debtor: Notice of default: Foreign corporation: Transacting business within the state: Interstate commerce: Limitations on state's power: Agency: Knowledge of agent.*

1. Where a guaranty is one of payment and not of mere collection, no efforts to collect from the debtor are necessary before demand on the guarantor.
2. No notice of the defaults of a debtor to a guarantor is necessary unless required by the provisions of the guaranty.
3. Where F. acted as agent for plaintiff, a foreign corporation, in soliciting orders for the sale of groceries to residents, and defendant guaranteed the payment for all goods supplied to F. by plaintiff, *held*, that as between plaintiff and defendant the validity of the guaranty was not affected by the fact that the transactions by which the goods were sold might be invalid be-

cause plaintiff, being a foreign corporation, had not complied with sec. 1770b, Stats. (1898), requiring the filing of articles of incorporation before transacting business within the state.

4. The power of the state to impose conditions, mentioned in sec. 1770b, Stats. (1898), on granting to foreign corporations the right to do business within the state is not restrained by sec. 2, art. IV, U. S. Const., providing that the citizens of each state shall be entitled to all the privileges and immunities of the citizens of the several states, nor by sec. 1, amend. XIV, U. S. Const., forbidding the state to make or enforce any law abridging the privileges or immunities of citizens of the United States.

5. The power of the state to require foreign corporations to file their articles of incorporation before transacting business within the state is subject to such implied restraints as grow out of the power in the federal government to regulate interstate commerce.

6. Transactions involving a physical transfer of merchandise from the possession and title of an owner in one state to the possession and ownership of purchasers in another are interstate.

7. Soliciting orders or making a contract for the sale of goods situated in one state and which by the terms of the order or contract are to reach the hands of a purchaser in another is an inherent part of the commerce consisting of the whole transaction.

8. Delivery to the purchaser of goods needing to be transported from one state into another is an inherent and essential part of "commerce," without consideration as to the manner or continuity of the transportation or the maintenance at the time of delivery of the same inclosure or package which characterized the commencement of the transportation.

9. "Commerce" comprehends all the intercourse between parties necessarily or ordinarily involved in a commercial transaction with reference to merchantable commodities.

10. Plaintiff, a foreign corporation having a store in Chicago, employed an agent in Wisconsin who solicited orders for groceries from persons within the state, noting the orders received upon a slip headed with plaintiff's name and upon which he inserted the name and address of the purchaser. After securing several orders the agent made out an "order sheet" addressed to plaintiff, directing it to ship to him the goods therein specified, and on the sheet he stated the various parcels that he had sold to different individuals, each order being referred to by its number but not by the name of the purchaser. The

goods were then wrapped in plaintiff's store at Chicago in the amounts of each specification designated by the number of the order on each parcel but not with the name of the purchaser, and all of these parcels were then assembled in larger packages and sent to the agent, who opened the same and delivered the individual parcels to the respective purchasers, collecting a price greater than that charged him by plaintiff. His profit or commission resulted from this difference in price. *Held*, that the only transaction of business by plaintiff in this state and its only contracts herein were in the conduct of interstate commerce and were not, therefore, subject to the provisions of sec. 1770*b*, Stats. (1898).

11. Actual knowledge by plaintiff of the identity of the person for whom any given package of goods was intended when it started the same on its transportation from Chicago was not essential to support the conclusion that the act of delivery by the agent was a part of interstate commerce; but if knowledge were necessary, then the agent's knowledge of the identity of the purchaser was the knowledge of the principal.

APPEAL from a judgment of the circuit court for Sauk county: E. RAY STEVENS, Circuit Judge. *Reversed.*

Action to recover upon a guaranty in the following words:

"For the purpose of enabling H. E. Ferris to purchase goods upon credit from *Loverin & Browne Company* of Chicago, I hereby guarantee that said H. E. Ferris shall promptly pay them for all goods which they may hereafter sell to him upon credit until this guaranty is revoked. Said payment to be made within ten days after receiving goods. My liability hereunder shall cover any balance to become due not exceeding $500. The goods ordered under this guaranty may be returned within ten days after receiving the same at invoice prices, if freight charges are paid and goods are returned in good order, properly packed."

Plaintiff was an Illinois corporation engaged in the wholesale grocery business without having complied with sec. 1770*b*, Stats. (1898). At the time of the guaranty business relations had been maintained for some time with H. E. Ferris, whereby he was called its agent. The business, however, consisted in his soliciting orders for groceries from in-

dividuals, noting the order upon a slip which was headed with plaintiff's name, and upon which he inserted the name and address of the purchaser of the goods ordered, and delivered a duplicate of the memorandum to the purchaser, stamped with a rubber stamp *"Loverin & Browne Company,* by H. E. Ferris, Agent." After securing several orders he made out what was called an "order sheet" addressed to the plaintiff, directing it to ship to him at a station named the goods there-after specified, and on the sheet he stated the various parcels that he had sold to different individuals, each order being referred to by its number, but not the name of the purchaser. The goods were then wrapped up in plaintiff's store at Chicago in the amounts of each specification designated by the number of the order on each parcel, but not with the name of said purchaser, and all of said parcels were then assembled in a larger package or case and shipped to Ferris. Prior to the making of the guaranty he had been required to send the cash for all goods ordered before the delivery of the same to him, and the guaranty was for the purpose of avoiding this necessity and obtaining ten days' credit in which to collect for the goods. On receipt of the larger package or box Ferris opened the same and delivered the individual parcels to the respective purchasers, collecting a price greater than that which was charged him. His profit or commission resulted from this difference of price. On receipt of this written guaranty by the plaintiff at Chicago it wrote to the defendant a notice of its acceptance of the same, which notice she never received, but knew at all times that plaintiff was delivering goods in reliance thereon. At the time of the guaranty defendant was unmarried, but shortly afterwards married Ferris. The business continued until April 16, 1902, soon after which she revoked her guaranty and instituted proceedings for divorce from Ferris. There was conflict of evidence as to whether she sent a revocation of her guaranty in October, 1901, or not until the latter part of April, 1902. The bal-

ance due from Ferris at that time above all subsequent collections by him was $340.76. The jury by special verdict found (1) that defendant did not receive a letter from the plaintiff notifying her of its acceptance of the guaranty; (2) that she did not revoke her guaranty on October 20, 1901; and (3) that Ferris was acting as agent for the plaintiff in the sale of the goods. Each party moved for judgment on the verdict, and the court rendered judgment for the defendant upon the ground stated in an opinion filed, that, Ferris being the agent of the plaintiff in making the sales which were the basis of defendant's liability, such sales constituted a transaction of business in this state by a foreign corporation and the arrangement with him was illegal, and that such illegality infected defendant's guaranty; from which judgment the plaintiff appeals.

For the appellant there was a brief by *V. H. Cady* and *Grotophorst, Evans & Thomas,* and oral argument by *Mr. E. A. Evans* and *Mr. Cady.*

For the respondent there was a brief by *Bentley & Kelley,* and oral argument by *F. R. Bentley.*

Dodge, J. The right of plaintiff to recover is resisted by the defendant on the ground, among others, of revocation and her inability as a married woman to renew the guaranty thereafter. On this question, however, the verdict is adverse to the defendant and establishes that she did not revoke as claimed, and this finding has support in the evidence. While defendant testifies without contradiction that she wrote a letter in October, the receipt of that letter is denied by plaintiff, and certain other correspondence is offered which tends to justify the conclusion that she never sent any letter declaring the guaranty at an end until after the last shipment of goods involved in plaintiff's claim.

Another objection is that defendant never was notified of Ferris's default until after she revoked her guaranty, and

that no efforts have been made to collect from Ferris, although there is evidence of his financial responsibility. These contentions are met, however, by the very obvious consideration that the guaranty is one of payment and not of mere collection; hence no efforts to collect from him before demand on the guarantor were necessary. *Day v. Elmore,* 4 Wis. 190; *Hoover v. McCormick,* 84 Wis. 215, 54 N. W. 505. Nor is there any provision in the guaranty which imposed on the plaintiff the duty to notify defendant of failures on the part of Ferris to remit according to his agreement. The evidence is uncontradicted that notice was given promptly after the revocation of the guaranty and demand made on her and that no extensions have been conceded to Ferris.

On all the foregoing subjects the decision of the trial court was adverse to the defendant. The judgment in her favor was predicated solely upon the proposition that the contract between plaintiff and Ferris constituting him its agent, whereby it, acting through him, sold goods in Wisconsin, was forbidden by sec. 1770b, Stats. (1898), and therefore was illegal, so that no liability could arise therefrom from Ferris to the plaintiff.

We have very much doubt, notwithstanding the answer of the jury to the third question of the special verdict, whether the plaintiff can be considered as having contracted for the sale or delivery of any goods to individual purchasers in Wisconsin. Conceding the correctness of the finding that by reason of the use of plaintiff's name in such sales and the acceptance of the orders in that name, even though by plaintiff's authority and consent, Ferris was plaintiff's agent *quoad* the individual purchasers so that they might have enforced their respective bargains against the plaintiff, yet the real question is, What was the arrangement between plaintiff and Ferris as to its dealings with him? for it was his indebtedness to the plaintiff which was guaranteed. There is

much evidence to support the idea that as between the original parties the plaintiff merely sold and shipped to Ferris the goods ordered by him, upon his promise to pay a fixed price therefor, and that his dealings with the individual purchasers in Wisconsin were his individual acts done independently of the plaintiff. If that were true, we apprehend no one would contend that such act of shipping goods from Chicago to Ferris on his order received by mail could constitute the transaction of business in this state, or the making of a contract here which affected the plaintiff's personal liability under sec. 1770*b*. But as the court has given a broader construction to the jury's finding in the light of all the evidence, and has held that because he was *its agent therefore* the plaintiff so acted in his acts of soliciting and closing orders and delivering goods that they constituted its transaction of business, we prefer to consider the rights of the parties upon that basis.

Sec. 1770*b* has been several times considered by this court and upheld to the full extent of its terms. It is enacted under the undoubted power of every state to impose conditions in absolute discretion upon granting the privilege of doing business in this state to any foreign corporation. *Paul v. Virginia,* 8 Wall. 168; *Chicago T. & T. Co. v. Bashford,* 120 Wis. 281, 97 N. W. 940. That power is not restrained by sec. 2, art. IV, of the federal constitution, providing that the citizens of each state shall be entitled to all the privileges and immunities of the citizens of the several states, nor by sec. 1, amend. XIV, to that constitution, providing that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, because foreign corporations are not citizens. *Paul v. Virginia, supra; Chicago T. & T. Co. v. Bashford, supra.* It is, however, subject to an implied restraint, in that the federal government is invested by sec. 8, art. I, Const. U. S., with the power "to regulate commerce with foreign nations and among

the several states," whereby is excluded the exercise of any power or regulation by the several states. *Gibbons v. Ogden,* 9 Wheat. 1; *Brown v. Maryland,* 12 Wheat. 419. When, therefore, the trial court reached the conclusion that the acts of the plaintiff constituted transactions in this state forbidden by the local law, there still remained another question for decision before the contracts could be held subject to our statutes and void for that reason. That question was whether they constituted any essential part of commerce among the several states, a question apparently not considered and certainly not expressly decided by the trial court. This clause in the constitution of the United States has been the subject of multitudinous consideration and decision, and it has become unquestionably established that the words thereof are to receive the broadest reasonable construction.

The transactions of the plaintiff, assuming Ferris's agency so that his acts were its acts, involved a physical transfer of merchandise from the possession and title of an owner in Illinois to the possession and ownership of purchasers in Wisconsin, and most obviously, therefore, were interstate, thus leaving for consideration only the questions whether the several acts which were done in this state were an inherent part of *commerce.* In recent years the term "commerce," especially "interstate commerce," has been the subject of much legislation and litigation, and that legislation and litigation has been so largely addressed to the subject of transportation that there has perhaps grown up a somewhat indefinite conception that interstate commerce and interstate transportation are synonymous and coterminous expressions. But this is far from true. Indeed, in the great leading case as to the meaning of the term "commerce" in the constitution, namely, *Gibbons v. Ogden,* 9 Wheat. 1, 189, the contention strenuously urged and overcome only by the masterly logic of MARSHALL, C. J., was to the effect that transportation was not a part of the commerce of the constitution at all, but

merely the transactions of buying and selling. The court said.:

"The counsel for appellee would limit it [commerce] to traffic, to buying and selling, or to interchange of commodities, and do not admit that it comprehends navigation. This would restrict a general term applicable to many objects to one of its significations. Commerce undoubtedly is traffic; but it is something more. It is intercourse. It describes the commercial intercourse between nations and parts of nations in all its branches."

And in the succeeding case expounding this same clause of the constitution with reference to a law which sought to tax the act of selling imported goods the court said:

"Commerce is intercourse. One of its most ordinary ingredients is traffic. . . . To what purpose should the power to allow importation be given, unaccompanied with the power to authorize a sale of the thing imported? Sale is the object of importation, and is an essential ingredient of that intercourse, of which importation constitutes a part. It is as essential an ingredient, as indispensable to the existence of the entire thing, then, as importation itself. It must be considered as a component part of the power to regulate commerce. Congress has a right, not only to authorize the importation, but to authorize the importer to sell." *Brown v. Maryland,* 12 Wheat. 419.

These comprehensive utterances have hardly been improved upon since, even in the light of a century's experience of ingenious attempts to differentiate the acts which inhere in commerce and those which are extrinsic to it, and further quotation from later cases can hardly add to their force. Parenthetically it may be said, for accuracy, that it has been decided that the traffic or intercourse, in order to constitute commerce or a part thereof, must relate to some merchantable commodity, or at least that it is not sufficient that it relate to a contract of insurance (*Paul v. Virginia,* 8 Wall. 168), or to communication of instruction across state lines (*International T. Co. v. Peterson,* 133 Wis. 302, 113

N. W. 730) ; a qualification obviously of no importance here, for the subject of whatever transactions were had was groceries, naturally and customarily the subject of barter and sale.

In confirmation of the broad but accurate language quoted, authorities are numerous that the act of soliciting orders or making a contract for the sale of goods situated in one state, and which by the terms of the order or contract are to reach the hands of a purchaser in another, is an inherent part of the commerce consisting of the whole transaction. *Cooper Mfg. Co. v. Ferguson,* 113 U. S. 727, 5 Sup. Ct. 739; *Robbins v. Shelby Co. Tax. Dist.* 120 U. S. 489, 7 Sup. Ct. 592; *Stockard v. Morgan,* 185 U. S. 27, 22 Sup. Ct. 576; *Rearick v. Pennsylvania,* 203 U. S. 507, 27 Sup. Ct. 159; *Loewe v. Lawlor,* 208 U. S. 274, 28 Sup. Ct. 301; *Greek-Am. S. Co. v. Richardson D. Co.* 124 Wis. 469, 102 N. W. 888. Not less unanimous are the authorities in asserting that the delivery to the person who has so purchased goods needing to be transported from one state into another is also an inherent and essential part of the intercourse defined by the word "commerce," and that too without consideration as to the manner or continuity of the transportation or the maintenance at the time of delivery of the same inclosure or package which characterized the commencement of the transportation. *Lyng v. Michigan,* 135 U. S. 161, 10 Sup. Ct. 725; *Crutcher v. Kentucky,* 141 U. S. 47, 11 Sup. Ct. 851; *Caldwell v. North Carolina,* 187 U. S. 622, 23 Sup. Ct. 229; *Rearick v. Pennsylvania, supra; Loewe v. Lawlor, supra; Butler Bros. S. Co. v. U. S. R. Co.* 156 Fed. 1; *Greek-Am. S. Co. v. Richardson D. Co., supra.* It cannot now be doubted that "commerce" in the federal constitution comprehends all of the intercourse between the parties necessarily or ordinarily involved in a commercial transaction with reference to merchantable commodities. Nor can it be doubted that the solicitation of the purchaser by the seller, the contract of purchase and sale, and the actual physical delivery to the pur-

chaser by whatever means may be selected are all inherent parts of the intercourse pertaining to trade or traffic in merchandise. But obviously the plaintiff, in the most extreme view of the evidence, performed no other acts in Wisconsin. Hence its only transaction of business in this state and its only contracts herein were in the conduct of interstate commerce and could not be forbidden or avoided by a state law.

The respondent seeks to differentiate this case from the principle of the cases cited by pointing out that the plaintiff itself or its officers had no knowledge of the identity of the person for whom any given package of goods was intended when it started the same on its transportation from Chicago. We fail to see any significance to this circumstance except its evidentiary effect to disprove the fact that the sale to such purchaser had been made at all by the plaintiff, in which case, of course, neither the contract of purchase nor the act of delivery would have been its act, and hence not in derogation of sec. 1770b. If, however, we assume such agency for Ferris as to make both sale and delivery the act of the plaintiff, then Ferris's knowledge of the identity of the purchaser was the knowledge of his principal, and the box of crackers or parcel of coffee, when shipped from Chicago, was intended by plaintiff to reach and be delivered to the identical person who had ordered it. However, we do not deem this consideration at all essential to the conclusion that the act of delivery was a part of the interstate commerce. We conclude that neither the contract between plaintiff and Ferris nor between plaintiff and defendant was within any prohibition of law so as to affect the validity of the latter, which therefore must be enforced according to its terms.

*By the Court.*—Judgment reversed, and cause remanded with directions to render judgment for plaintiff for the sum of $340.76, with interest from April 16, 1902.

BASHFORD, J., took no part.