F. A. PATRICK & Co. and another, Appellants, vs. DES-CHAMP, Respondent.

*February 3—February 21, 1911.*

*Foreign corporations: Right to do business: Interstate commerce: Sale of goods: Taking and enforcing security: Chattel mortgages: Sale: Filing affidavit: Application of proceeds: Trial: Directing verdict.*

1. Sec. 1770b, Stats. (1898), which provides that no foreign corporation shall transact business or acquire or dispose of property in this state until it shall have filed with the secretary of state a certain certificate and verified statement and paid a prescribed fee, has no application to transactions of interstate commerce, the exclusive power to regulate which is vested in Congress.
2. If a foreign corporation sells goods and delivers them from its place of business outside of the state to a customer within the

F. A. Patrick & Co. v. Deschamp, 145 Wis. 224.

state, the subsequent taking of a chattel mortgage on property within the state, to secure payment of the purchase price of such goods, and the sale on foreclosure of the mortgaged property, are incidents of the transaction and included in the scope of the term "interstate commerce."

3. Sec. 2316a, Stats. (1898), which prohibits a sale of property taken under a chattel mortgage before the expiration of five days from the time of taking, does not apply where the mortgagor consents to an earlier sale, such a case being expressly excepted.

4. The requirement of sec. 2316c, Stats. (Supp. 1906: Laws of 1903, ch. 122), that when property is taken and sold under a chattel mortgage the mortgagee shall within ten days after the sale file in the town clerk's office an affidavit giving the particulars of the sale, applies only where the property has been taken *in invitum* and not where the mortgagor consents to the taking.

5. In determining whether a verdict should be directed for one party the evidence of the other must be assumed to be true.

6. Under all ordinary circumstances debtor and creditor may by agreement control the application of payments between themselves.

7. A chattel mortgagee may, after taking the property, restore it to the possession of the mortgagor under an agreement that the proceeds of sales thereof shall first be applied upon an unsecured debt; and such arrangement is not invalid because the mortgagee is a foreign corporation and has not complied with sec. 1770b, Stats. (1898), if the agreement was made in a *bona fide* attempt to give on the one side, and receive on the other, security for the payment of an indebtedness resulting from interstate sales of goods.

8. One who actually bought and received merchandise is liable to pay for the same although at her request the account was kept and the goods invoiced in a different name in order to avoid trouble with a third person with whom she had agreed not to compete in business.

APPEAL from a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Reversed.*

The action is replevin for a stock of miscellaneous goods. The plaintiffs claim as mortgagees, the defendant as owner. Some facts were undisputed upon the trial. Among these were the following: The plaintiffs are two Minnesota merchandising corporations doing business at Duluth, Minne-

sota, neither of which had filed in the office of the secretary of state the certificate and verified statement required by sec. 1770b, Stats. (1898), at the time of the transactions involved in this action. Prior to July 21, 1908, the defendant, who conducts a general store at Iron River, Bayfield county, Wisconsin, had purchased large bills of goods from each of the plaintiff corporations, and was indebted to them in the aggregate to an amount considerably exceeding $3,000. On the day named she executed a demand note to each of them for $1,500, to apply on her indebtedness for goods purchased, and a chattel mortgage on her stock of goods for $3,000 to secure both notes. Plaintiffs claim that *Mrs. Deschamp* consented that they take immediate possession. She denies this. But in any event the fact is undisputed that they took immediate possession and placed a man in charge and sold goods from the stock to the gross amount of about $2,100 at private sale day by day until October 7th, when some difficulty took place between *Mrs. Deschamp* and the man in charge and the store was closed for a few days, and the plaintiffs were about to proceed to close out the stock at public sale. At this time *Mrs. Deschamp* went to Duluth and saw the plaintiffs and desired that the store be reopened and private sales continued, and it is claimed by the plaintiffs that she then agreed that if they would do this the sums already realized on sales of goods should be applied on the open accounts not covered by the notes and mortgage until the open accounts were paid and then applied on the notes. This agreement is denied by the defendant. She delivered some other collaterals to the plaintiffs, reopened the store, and again commenced to sell goods. Sales continued until some time in May, 1909, when plaintiffs again closed the store preparatory to a public sale, claiming that about $1,200 was still due them. At about this time the defendant obtained possession of the store and goods without plaintiffs' consent and refused to deliver it up to the plaintiffs again, and this replevin ac-

tion was then brought. The trial court directed a verdict for the defendant, leaving only the question of the value of the property to the jury, and the plaintiffs appeal.

For the appellants there was a brief by *C. W. Stilson* and *W. P. Crawford,* and oral argument by *Mr. Crawford.*

For the respondent there was a brief by *A. T. Rock* and *C. F. Morris,* and oral argument by *Mr. Rock.*

WINSLOW, C. J. Sec. 1770*b* of the statutes of this state (Stats. 1898) provides, among other things, that no foreign corporation shall transact business or acquire or dispose of property in this state until it shall have filed with the secretary of state a certain certificate and verified statement therein specified and paid a prescribed fee. The question sharply presented in this case is whether the taking and foreclosing of the mortgage in question are acts of interstate commerce. If a foreign corporation sells goods and delivers them from its place of business outside of the state to a man within the state, must the corporation comply with this law before it can receive or foreclose a mortgage on property in this state given to secure payment of the purchase price of the goods?

We think there can be no doubt as to the proper answer to this latter question. Such transactions are unquestionably acts of interstate commerce. *Greek-Am. S. Co. v. Richardson D. Co.* 124 Wis. 469, 102 N. W. 888. Sec. 1770*b* has no application to interstate commerce, because the exclusive power to regulate such commerce is vested in the Congress of the United States. *Loverin & B. Co. v. Travis,* 135 Wis. 322, 115 N. W. 829. There must be read into the section "an exception of such business as constitutes interstate commerce and an exception of such property as is acquired, held, or disposed of in this state in carrying on interstate commerce." *Elwell v. Adder M. Co.* 136 Wis. 82, 116 N. W. 882. "It cannot now be doubted that 'commerce' in the fed-

eral constitution comprehends all of the intercourse between the parties necessarily or ordinarily involved in a commercial transaction with reference to merchantable commodities." *Loverin & B. Co. v. Travis, supra,* at page 331.

In the light of these propositions which have already been laid down by this court, it seems that it can hardly be doubted but that the taking of security by mortgage for the payment of an interstate commerce debt is necessarily included within the scope of the term "interstate commerce." The interstate transaction cannot be said to be closed until the purchase price is paid. The taking of security for the payment of the purchase price is one of the ordinary incidents of a commercial transaction, not present in all, indeed, but frequently resorted to not only for the benefit and convenience of the seller but of the purchaser as well. To prohibit it or weight it down with burdensome conditions so as to materially interfere with its free exercise is certainly an attempt to regulate one of the very ordinary incidents of commerce. Without the right to receive security for the purchase price the foreign trader has lost one of the ordinary instrumentalities which make successful business possible, and a way has been found by which a state may impair the freedom of commerce between the states by making it difficult for the foreign trader to collect or secure his pay. So long as it appears that the security is taken for the *bona fide* purpose of securing and collecting an interstate commerce debt and is being enforced by ordinary and lawful methods for that purpose alone, the statute referred to can have no application.

There was sufficient evidence in this case from which these facts might have been found, and consequently the court erred in directing a verdict for the defendant unless there be other facts subsequently arising which justify the direction, notwithstanding the fact that the giving of the mortgage was an integral part of an interstate commerce transaction. Some contentions of this kind are made and will be noticed.

It is claimed by respondent that the mortgage has been canceled by failure to comply with sec. 2316*a*, Stats. (1898), and sec. 2316*c*, Stats. (Laws of 1903, ch. 122). The first of these sections prohibits a sale of personal property "taken" under a chattel mortgage except with the consent of the mortgagor before the expiration of five days from the time of taking, and the second provides that when property is "taken" and sold under a chattel mortgage the mortgagee shall file in the town clerk's office within ten days after the sale an affidavit giving the particulars of the sale. The penalty for violation of each statute is cancellation of the mortgage. The difficulty with the argument under the first section cited is that it does not apply where the mortgagor consents to the sale, and there was evidence of consent in this case (*Stevens v. Breen*, 75 Wis. 595, 44 N. W. 645) ; the difficulty with the argument under the second section is that this court has held that the section only applies where the property has been "taken" *in invitum*, not to cases where the mortgagee consented to the taking, and in this case there was, as before stated, direct evidence that *Mrs. Deschamp* consented to the taking. *Hammel v. Cairnes*, 129 Wis. 125, 107 N. W. 1089.

It is claimed that the mortgage was fully paid before the defendant retook possession of the goods in May, 1909. Upon this point the evidence is in some confusion. It appears by statements and accounts put in evidence that the total amount realized from the private sales between July 21 and October 1, 1908, was $2,060.24, from which necessary expenses amounting to $452.72 were deducted, leaving $1,607.52 to apply on the indebtedness; that after October 1st the plaintiff *F. A. Patrick & Co.* received from sales and from collections of collaterals $1,471.95, and the plaintiff *Finch Van Slyke & McConville* $671.48, making a total of $2,143.43. There is no complete statement of the expenses during this latter period, but from memoranda introduced such expenses appear to have been $409.24, leaving $1,734.19

to apply on the indebtedness.    If these sums must be applied
on the mortgage notes it seems that they must have been fully
paid.    But, as previously stated, the mortgage notes did not
cover the entire indebtedness.    It is claimed by appellants,
and the claim does not seem to be seriously disputed by re-
spondent, that respondent owed each of the appellants more
than $2,000 when the mortgage was given, thus leaving a
total unsecured indebtedness of more than $1,000.    As be-
fore stated, $1,607.52 net had been realized in October, 1908,
when the store was closed in preparation for a public sale.
Had this all been applied on the mortgage debt it would still
leave about $1,400 due thereon beside the $1,000 unsecured.
At this time, however, *Mrs. Deschamp* went to Duluth and
endeavored to persuade the plaintiffs to open the store and
continue the private sales.    The plaintiffs' testimony is that
they finally consented to this on condition that the defendant
execute a written paper authorizing them to apply all sums
received upon the open accounts until they were paid, and a
paper to this effect purporting to be signed by *Mrs. Deschamp*
was introduced in evidence.    The defendant denied the sig-
nature, but there was sufficient evidence to go to the jury on
the question.    In determining whether a verdict should have
been directed for defendant the plaintiffs' evidence must be
assumed to be true.    Under all ordinary circumstances the
debtor and creditor have a perfect right by agreement to con-
trol the application of payments between themselves, and the
agreement that the money received be first applied on the un-
secured indebtedness of $1,000 before application should
begin on the mortgage notes would be unassailable.    If as-
sailable here it must be simply because it conflicts with
sec. 1770*b*, Stats. (1898).    But we are unable to see how it
can be said to do so if it be granted that it was done in a
*bona fide* attempt to give, on the one side, and receive on the
other, security for the payment of an indebtedness resulting
from interstate sales of goods.    As before seen, all the in-

debtedness here resulted from such sales. It could be lawfully secured by mortgage, and manifestly it could have been lawfully secured without formal mortgage by turning the property over to the plaintiffs to sell until they had received their pay. This is really all that the agreement as to the application of payments· amounts to if the plaintiffs' testimony be true.

It appears by the evidence that a considerable part of the account against *Mrs. Deschamp* on the books of *F. A. Patrick & Co.* was kept under the name of the Landry Mercantile Company, and it is claimed by the defendant that she is not responsible for this account. There was evidence on the part of the plaintiffs, however, that the account was so kept and goods so invoiced at the request of *Mrs. Deschamp,* on the ground that if goods were sent to her in her own name she might be involved in trouble with one Menno, to whom she had previously sold out her business and agreed not to go into business again. There was also evidence that *Mrs. Deschamp* in fact bought and received the goods charged in the name of the Landry Mercantile Company. If the facts were as testified to on behalf of the plaintiffs, we see no reason why she is not responsible for the price of the goods.

For the reasons stated there must be a new trial.

*By the Court.*—Judgment reversed, and action remanded for a new trial.