UNITED STATES v. TUCKER.

(District Court, S. D. Ohio, E. D.   April 8, 1911.)

**1. COMMERCE (§ 40*)—SUBJECTS OF REGULATION—SALES.**

The sale and shipment from Ohio to Washington, D. C., of a bottle of medicine containing cocaine without a label indicating its presence, the seller knowing when he solicited the order that the transaction, if completed, would necessitate interstate transportation, was interstate commerce, whether the sale was made before or after shipment, and is within Pure Food & Drugs Act June 30, 1906, c. 3915, 34 Stat. 768 (U. S. Comp. St. Supp. 1909, p. 1187).

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 29, 30; Dec. Dig. § 40.*]

**2. COMMERCE (§ 14½,* New, vol. 12, Key No. Series)—SUBJECTS OF REGULATION—FORM OF NEGOTIATIONS.**

Commerce being intercourse, it is unimportant, in determining whether a transaction was interstate commerce, whether the negotiations were conducted by mail, by traveling salesmen, by telegraph, or by telephone.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 2, pp. 1287–1298: vol. 8, pp. 7606, 7607.]

**3. COMMERCE (§ 14½,* New, vol. 12, Key No. Series)—"INTERSTATE COMMERCE."**

Every negotiation, initiatory and intervening act, contract, trade, and dealing between citizens of any state or territory, or the District of Columbia, with those of another political division of the United States, which contemplates and causes importation from one such division to

---

another, whether it be of goods, persons, or information, is a transaction of interstate commerce.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 4, pp. 3724–3731.]

Nathan Tucker was convicted of violating the pure food and drugs act, and moves for a new trial. Overruled.

Sherman T. McPherson, U. S. Dist. Atty.

Vorys, Sater, Seymour & Pease, for defendant.

SATER, District Judge. The defendant delivered at Mt. Gilead, Ohio, and shipped from that place to one Henson (whose real name is Morgan), residing at Washington, D. C., a bottle of medicine containing cocaine. The bottle bore no label or brand indicating the presence of that drug in the medicine. The jury having found him guilty of violating the pure food and drugs act of June 30, 1906, 34 Stat. 768, c. 3915 (U. S. Comp. St. Supp. 1909, p. 1187), he moves to set aside the verdict on the ground that he was engaged in intrastate, and not in interstate, commerce.

In answer to an inquiry from Henson, the defendant mailed him an examination or symptom blank and what is manifestly a previously prepared stock letter, stating that under a separate cover were forwarded to him circulars fully explaining the defendant's system of relief and cure for asthma, hay fever, and nasal catarrh, and naming the cost of treatment. Henson was requested to fill out the blank and return it with full payment in advance, on receipt of which a treatment would be sent by express without delay. Henson filled out the symptom blank and returned it with a postal order for the sum named. Thereupon the defendant deposited in the mail at Mt. Gilead a bottle containing two ounces of the medicine, addressed to Henson, and also shipped to him by express an atomizer, both of which were received by Henson at Washington. Later a second bottle of medicine was sent in the same manner as the first. Henson made no suggestion and gave no direction as to the mode of transporting any of the medicine.

[1] Was the transaction in which the defendant engaged interstate commerce? His contention is that the sale and delivery were completed in Ohio, when the medicine was deposited in the mail, and that the title thereto then and there passed to the purchaser, free from any interest of the defendant therein, that the delivery to the postal department for transmission to Henson was a delivery to him, and that consequently the transaction was wholly intrastate and governed by the Ohio law of sales (99 Ohio Laws, pp. 413–425; sections 8381–8455, Ohio General Code). He claims that the fact that the sale was made with the intent that the medicine should be transported from Ohio to the District of Columbia after the sale and delivery were fully completed did not impart an interstate character to the transaction, because the agent by whom the transportation was effected—the United States mail—was the agent of the purchaser and not of himself. To sustain his contention he relies on State v. Mullin, 78 Ohio

St. 358, 85 N. E. 556, 18 L. R. A. (N. S.) 609, 125 Am. St. Rep. 710. In that case a resident of Harrison county gave an order by mail to a resident of Jefferson county for a case of beer to be forwarded to the purchaser by express, marked "C. O. D." The beer was sent, received, and paid for. It was held that the express company was the agent of the purchaser to receive the goods from the seller and the agent of the seller to receive their price from the purchaser, and that upon delivery to the carrier the title to the goods passed to the purchaser, although he was not entitled to their actual possession until he paid or tendered the purchase price. It was further held that the place of both the sale and delivery was the place of the seller's residence, and that the sale was completed when the seller delivered the goods to the carrier. The transaction was wholly intrastate, and the goods were shipped under instructions given by the purchaser. The facts of that case and the law applicable thereto readily distinguish it from the case at bar.

The second section of the pure food and drugs act is limited in its application to interstate and foreign commerce. The prohibition therein contained runs against the introduction of misbranded drugs into any state, or territory, or the District of Columbia, from any other part of the United States, or from any foreign country. The offense with which the defendant is charged in the indictment is the delivery of such a drug at Mt. Gilead, Ohio, for shipment, and its actual shipment from that place, to a point outside the state, an offense which, if established, is punishable under the provisions of the act.

[2] That the negotiations were conducted by mail is unimportant. Commerce is intercourse (Gibbons v. Ogden, 9 Wheat. 189, 193, 6 L. Ed. 23), and for the purposes of commercial intercourse parties may avail themselves of the mails as well as of traveling salesmen (Robbins v. Shelby Taxing District, 120 U. S. 489, 495, 7 Sup. Ct. 592, 30 L. Ed. 694), or of the telegraph (Pensacola Tel. Co. v. Western Union Tel. Co., 96 U. S. 1, 24 L. Ed. 708), or the telephone (Central Union Telephone Co. v. State, 118 Ind. 194, 19 N. E. 604, 10 Am. St. Rep. 114; Judson on Interstate Commerce, § 6).

Neither a sale nor the place of sale and delivery is alone the test of interstate commerce, nor does transportation, although an adjunct essential to commerce, constitute a transaction interstate commerce. A sale, the parties to which are from different states, when such sale necessarily involves the transportation of goods, is a transaction of interstate commerce, whether the contract of sale be made in the one state or the other, or made before or after shipment.

[3] Every negotiation, initiatory and intervening act, contract, trade, and dealing between citizens of any state, or territory, or the District of Columbia, with those of another political division of the United States, which contemplates and causes such importation, whether it be of goods, persons, or information, is a transaction of interstate commerce. U. S. v. Swift & Co. (C. C.) 122 Fed. 529, 531; Butler Bros. Shoe Co. v. U. S. Rubber Co., 156 Fed. 1, 17, 84 C. C. A. 167; Hopkins v. U. S., 171 U. S. 578, 597, 19 Sup. Ct. 40, 43 L. Ed. 290;

Robbins v. Shelby County Taxing Dist., 120 U. S. 489, 497, 7 Sup. Ct. 592, 30 L. Ed. 694; Caldwell v. North Carolina, 187 U. S. 622, 629, 23 Sup. Ct. 229, 47 L. Ed. 336; 7 Cyc. 416; Globe Elevator Co. v. Andrew (C. C.) 144 Fed. 871, 882; In re Charge to Grand Jury (D. C.) 151 Fed. 834, 839. When the state courts have been called upon to express themselves, their utterances have been in harmony with the foregoing. Cook v. Rome Brick Co., 98 Ala. 413, 12 South. 918; Culberson v. American Trust & Banking Co., 107 Ala. 464, 19 South. 34; Loverin & Browne Co. v. Travis, 135 Wis. 322, 331, 115 N. W. 829, 832. In the last-named case it is said that:

"It cannot now be doubted that 'commerce,' in the federal Constitution, comprehends all of the intercourse between the parties necessarily or ordinarily involved in a commercial transaction with reference to merchantable commodities. Nor can it be doubted that the solicitation of the purchaser by the seller, the contract of purchase and sale, and the actual physical delivery to the purchaser, by whatever means may be selected, are all inherent parts of the intercourse pertaining to trade or traffic in merchandise."

The transaction in which the defendant engaged was interstate commerce. The evidence justified the verdict returned by the jury, and the motion is therefore overruled.