HUERTH, Appellant, vs. TOWN OF PRAIRIE DU SAC, Respondent.

*October 9—November 14, 1944.*

26

For the appellant there was a brief by *Hill, Miller & Hill* of Baraboo, and oral argument by *James H. Hill.*

*H. M. Langer* of Baraboo, for the respondent.

FAIRCHILD, J.    This action was brought by appellant to assert a right which he claims has been invaded by acts of respondent proceeding in road construction over marshlands in a manner contrary to the commands of our statutes.    (Sec. 88.38, Stats.)    The statute upon which appellant relies provides for the maintaining of culverts and outlets to permit natural drainage in a situation such as is referred to in the above statement of facts.    Under this law, a town constructing

or maintaining a public road grade through, over, and across any marshland or other natural depression, over or through which surface water naturally filters and percolates, must provide necessary ditches or culverts or other outlets for such water or respond in damages for loss caused by reason of such failure or neglect.

The condition of the land of which the appellant complains is ascribed by him to water which is not a watercourse but to that which falls or rises to the surface and diffuses over the ground where it continues to be until it works its way under ground or over the surface without becoming a part of any floodwaters which might recede when the high water causing them leaves the land.

The appellant's complaint stated a cause of action. And the answer is a sufficient pleading. Considerable testimony was offered by the parties in support of their respective allegations. So the question is whether the trial court ought not to have submitted this controversy to a jury. In this state of affairs we must look to the evidence presented by the appellant and if found not to be inherently defective or untrue, assume its validity. *Finkelston v. Chicago, M. & St. P. R. Co.* (1896) 94 Wis. 270, 68 N. W. 1005; *F. A. Patrick & Co. v. Deschamp* (1911), 145 Wis. 224, 129 N. W. 1096; *Leckwe v. Ritter* (1932), 207 Wis. 333, 241 N. W. 339.

The evidence offered on the part of appellant is that a short north-and-south road, was constructed years before from a point in the north line of section 16 and running south in a course that leads it along a line one quarter of a mile west of the west boundary of section 15 if extended (appellant's land lies in section 15). This road originally ended at a point one quarter of a mile west and immediately opposite the northwest corner of appellant's land but was later lengthened. And the extension of this road, together with the building of an east-and-west road, it is alleged, produces the result of which appellant complains. The extension of this north-and-south

road was to the south and ran to a point opposite and eighty rods west of appellant's southwest corner. There is evidence that at times the grade of the first part of this north-and-south road was raised. Then, at the time of extending it, the town board of respondent laid out the other highway referred to, from the northeast corner of appellant's land west along the north line a distance of some miles to Honey Creek. This road was laid a few feet north of and ran parallel to a private ditch which had been laid out about thirty years previously. This resulted in intersecting the two highways at the point eighty rods west of appellant's northwest corner. The construction of the outlets or drainage facilities at this intersection is a basis of dispute and furnishes, under the evidence, a question as to its sufficiency which should have been determined by the jury. The question, if one exists, is whether the town has met the responsibility placed upon it by statute by providing the essentials for protecting the appellant's property by a reasonable equivalent of the natural drainage of his land. There is evidence that at this point (the intersection of the two roads) the respondent placed a culvert, after a bridge across the private ditch had been taken out. A witness testified that he was employed by the town on the north-and-south road and the east-and-west road. He said he was first employed in 1933 and did a little work on the north-and-south road on the north end; that the work he did raised the grade of the road quite a little. In 1935 the work consisted of hauling in dirt, gravel, sand, and "anything we could get a hold of, and gravel on top." This raised the grade of the north-and-south road in "some places about three, three and a half feet; some places a foot and a half; some places two feet." He further testified that he worked at the intersection of the two roads, having charge of the work and that he last worked on those roads in 1938 and that material has been hauled to those roads in 1938, 1939, and 1940. He could recall when the east-west ditch was originally put in and his

recollection was that the people crossed the ditch on a wooden bridge, that it had rotted out or was torn out; that the next construction there was a spillway with a steel culvert under it; that the culvert was laid at the bottom of the ditch and the spillway was placed over it. It appears from the testimony that this culvert at the bottom of the ditch was washed out and that then that space was filled with rock and dirt so as to sustain the spillway from dropping. This witness testified that he filled under the spillway where the culvert had formerly been; that later in 1939 a culvert was put on top of the spillway which is the culvert that is there now. While floodwaters came upon the land, still the inference arises from the evidence most favorable to appellant, that the lifting of the outlet which seemed to have been inadequate to care for the drainage because sufficient water passed that way large enough in volume and strength to wash that culvert out; and that the placing of the outlet at a height above the bottom of that ditch not only equal to the diameter of the original culvert but plus the thickness of the spillway and the filling placed thereon, caused an inadequate provision for letting out of the water and became a cause of damage to the appellant. This witness further testified to working on the road in 1936 and 1937 and making observations during the years 1935, 1936, and 1937, and that the natural flow of water was across the road and toward the northwest; that "the first few years it would always wash our road out on the lower places, and we kept on filling in there and filling in until we finally had it solid so that it would hold it. It washes a little out yet once in awhile but not much." With reference to his observation he says he noted the change in vegetation and that the second and third years of working on the road, in case there came a heavy rain, there would be water to the east of the road in the low places. And through 1934, 1935, 1936, and 1937, vegetation "kept getting less, and the weeds and the slough grass getting more and more." There was testimony admitted under ob-

jection, but which seems proper enough, that the surface of the land was such as required ordinary rainfall to escape by seepage. Testimony was given by an engineer on cross-examination that the culvert and road grade would settle from the weight of the material; that the compacting area under the roadway would naturally hold back the percolation of water. And it seems to follow, sufficiently at least to create a jury question, that if water in an amount above that which will evaporate and that which the soil can absorb is held back by any obstruction it must contribute to the saturation of the land. The same witness who has been referred to as employed by the town said with reference to the placing of the culverts: "I put them in at what I considered the lowest points." In answer to the question on cross-examination: "And are you of the opinion that you put them low enough to accommodate any floodwaters that might come there from the east?" he answered: "I thought at the time I did, but I found out afterwards it was wrong."

From what has been said it appears that an ultimate question of fact to be answered was whether the surface waters deposited on the land were, by the acts of the town, so restrained that they destroyed the appellant's property. This is an action for injury to land by the obstruction of movement of waters resulting in an accumulation thereof to such an extent that the crops formerly growing there cannot be grown now upon the land. As the case was presented to the trial court, it did not clearly appear whether the appellant was seeking a recovery of temporary damages or whether the conditions were such as to warrant the conclusion that the damages were of a permanent nature permitting a recovery of all damages in this one action. There is evidence to support the claim that he had considerable loss. And that apparently the town board was not disposed to alter conditions. Certainly the appellant could not exercise the powers which belonged to the town board. Had the case been submitted and

the jury accepted as controlling the testimony in support of the claim and fixed a fair amount of damages upon the theory of a permanent injury, the judgment might have been affirmed. *Voigt v. Milwaukee County* (1914), 158 Wis. 666, 149 N. W. 392; *Board of Directors St. Francis Levee Dist. v. Barton* (1909), 92 Ark. 406, 123 S. W. 382; 27 R. C. L. p. 1166, sec. 88. It is considered that a jury question is fairly raised and that a new trial must be ordered.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant a new trial.