**In the Matter of GANDER MOUNTAIN, INC., Debtor.**

**GANDER MOUNTAIN, INC., as Debtor in Possession, and the Creditors' Committee of Gander Mountain, Inc., Plaintiffs,**

v.

**James R. HOLDEN, a sole proprietor d/b/a United Cartridge Company, Defendant.**

**Bankruptcy No. 80–03050. Adv. No. 81–1244.**

United States Bankruptcy Court, E.D. Wisconsin.

April 7, 1983.

Richard H. Casper, Foley & Lardner, Milwaukee, Wis., for the plaintiff/debtor Gander Mountain.

Howard Karman, Casa Grande, Ariz., for defendant.

David A. Erne, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C., Milwaukee, Wis., for plaintiff creditors' committee.

## MEMORANDUM DECISION

C.N. CLEVERT, Bankruptcy Judge.

In this preference action, the debtor, Gander Mountain, Inc. (Gander) and the Creditors' Committee of Gander Mountain, Inc., have joined as plaintiffs to recover $3,234.00 paid to United Cartridge Co. on or within 90 days prior to December 9, 1980, the date upon which Gander filed a voluntary Chapter 11 petition.[1] James R. Holden d/b/a United Cartridge Company answered the complaint claiming (1) the right to set off against the funds it received under the so-called net result rule of § 60(c) of the 1898 Bankruptcy Act, or in the alternative (2) an exception to the preference provisions under 11 U.S.C. § 547(c)(2).[2] The parties submitted the case to the court for its decision on stipulated facts and trial memoranda.

## FACTS

The defendant produced plastic shotgun shell wads, which were sold to Gander over a period of several years. During 1980, the

1. 11 U.S.C. § 547(b) provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—
(i) was an insider; and
(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

2. 11 U.S.C. § 547(c)(2) provides:

(2) to the extent that such transfer was—
(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;
(B) made not later than 45 days after such debt was incurred;
(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
(D) made according to ordinary business terms;

defendant made three sales and shipments to Gander. The first sale and shipment was pursuant to Invoice No. 1730, dated May 20, 1980, in the amount of $6,468.00, which Gander paid in two installments: the first, on or about August 25, 1980, in the sum of $3,000.00, and the second on or about September 1, 1980, in the sum of $3,468.00. The second sale and shipment was pursuant to Invoice No. 1759, dated July 25, 1980, in the amount of $3,234.00, which Gander paid with a check in that amount drawn on September 10, 1980. The check was mailed on that date to the defendant, deposited by him in his business account on September 15, 1980, and paid by Gander's drawee bank on September 18, 1980. The third such sale and shipment was pursuant to Invoice No. 1772, dated August 26, 1980, in the amount of $2,426.25, which was not paid. Gander was insolvent on both September 10, 1980, and September 18, 1980. Gander filed the original petition in these proceedings on December 9, 1980.

## DISCUSSION

■ The delivery and payment of Gander's check of September 10, 1980, on September 18, constituted a voidable prefer-

ence under § 547, unless an exception is found to apply.[3]

■ Under the old net result rule, courts compared the total transfers to a creditor within the preference period with the total benefit provided by the creditor during that same period.[4] In the instant case, the last sale and shipment occurred on August 26 and the 90 day preference period ran from September 10, 1980 until December 9, 1980.[5] Hence, the last sale and shipment fell outside of the 90 day period and the net result rule does not apply in this case. It follows that the court need not discuss whether 547(c)(4) has modified or replaced the net result rule.

\*    \*    \*    \*    \*    \*

■ The court must next determine whether Gander's delivery of the September 19, 1980, check in the amount of $3,234.00 took place within 45 days of the shipment of goods on July 25, 1980, and thereby fell within the provisions of § 547(c)(2)(B).

Rule 6(a) of the Federal Rules of Civil Procedure, which is made applicable to bankruptcy cases by Rule 906(a) of the Fed-

---

3. The date of the payment is the date when the check is accepted by the drawee bank. Wis. Stat. § 403.409(1) provides:
   (1) A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it.
   Wis.Stat. § 403.410(1) provides:
   (1) Acceptance is the drawee's signed engagement to honor the draft as presented. It must be written on the draft, and may consist of his signature alone. It becomes operative when completed by delivery or notification.
   See also: Fitzpatrick v. Philco Finance Corp., 491 F.2d 1288 (7th Cir.1974); Itule v. Luhr Jensen & Sons, Inc. (In re Sportsco, Inc.) 12 B.R. 34, 7 BANKR.CT.DEC. (CRR) 1025 (Bkrtcy.D.Ariz.1981); In re Duffy, 3 B.R. 263, 6 Bankr.Ct.Dec. (CRR) 88 (Bkrtcy.S.D.N.Y.1980). Contra: Shamrock Gold Co. v. Richcraft, Inc., 680 F.2d 645 (9th Cir.1982); Thomas W. Garland, Inc. v. Union Electric Company (In re Thomas W. Garland, Inc.), 19 B.R. 920, 8 Bankr.Ct.Dec. (CRR) 1357 (Bkrtcy.E.D.Mo. 1982).

4. Section 60(c) If a creditor has been preferred, and afterward in good faith gives the debtor further credit without security of any kind for property which becomes a part of the debtor's estate, the amount of such new credit remaining unpaid at the time of the adjudication in bankruptcy may be set off against the amount which would otherwise be recoverable from him. 11 U.S.C. § 96(c), repealed by Public Law 95–598, November 6, 1978, 92 Stat. 2549.
   According to the House and Senate reports to the Bankruptcy Reform Act of 1978, the net result rule was codified in § 547(c)(4):
   The fourth exception codifies the net result rule in section 60c of current law. If the creditor and the debtor have more than one exchange during the 90-day period, the exchanges are netted out according to the formula in paragraph (4). Any new value that the creditor advances must be unsecured in order for it to qualify under this exception. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 374 (1977), S.Rep. No. 95–989, 95th Cong., 2d Sess 88 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5874, 6330.

5. The preference period is determined by counting backward from December 9, 1980, the date the petition was filed.

eral Rules of Bankruptcy Procedure, provides in pertinent part that "[i]n computing any period of time prescribed . . . by an applicable statute, the day of the act or event, or default from which the designated period of time begins to run shall not be included." Thus in determining the 45th day from the sale and shipment of goods in this case, as provided by § 547(c)(2)(B), July 25 is not counted and the 45th day is September 8. The court, therefore, finds that Gander's September 10 check was delivered more than 45 days after the defendant shipped goods to Gander and that the § 547(c)(2) preference exception is not applicable.

\*    \*    \*    \*    \*    \*

■ Defendant's trial memorandum might be read to assert that § 547(c)(2)(B) is dispositive in this action if the court applies the September 10 check to the sale and shipment of August 26. However, because Gander designated that its check was to be applied to Invoice 1759, the application of payments doctrine mandates that the September 10 check be applied to the July 25 rather than the August 26 sale and shipment.

In *Moser Paper Co. v. North Shore Pub. Co.,* 83 Wis.2d 852, 266 N.W.2d 411 (1977), which this court previously followed in *C. Bundy Jr., Inc. v. Karsten (In re Karsten),* 16 B.R. 704 (Bkrtcy.E.D.Wis.1982), the Wisconsin Supreme Court held:

> Where a debtor owes a creditor multiple debts, a payment by the debtor should be applied to one or another of the debts as the debtor directs. *F.A. Patrick & Co. v. Deschamp,* 145 Wis. 224, 129 N.W. 1096 (1911) 83 Wis.2d at 857–58, 266 N.W.2d 411.

The court, therefore, concludes that the check drawn on September 10, 1980, in the amount of $3,234.00 constituted a preference within the provisions of § 547 and that none of the claimed exceptions apply. Payment by Gander to the defendant will, therefore, be set aside and judgment will be entered in accordance with the demands of the complaint.