## IOWA FALLS MFG. CO. V. FARRAR.

1. Rv. Civ. Code, Secs. 833-835, prohibiting corporations from doing any business or maintaining any action within the state, except on condition of its filing a copy of its articles.in the office of the Secretary of State and appointing a state agent on whom process may be served, did not prevent foreign corporations from transacting and enforcing interstate business within the state, and was therefore not invalid as an interference with interstate commerce.

2. Rev. Civ. Code, Secs. 833-835, prohibit a non-resident corporation from transacting any business, acquiring or disposing of any property within the state, or instituting therein or maintaining any actions at law or otherwise until it shall have filed in the office of the Secretary of State a duly authenticated copy of its charter or articles of incorporation, and shall have appointed a resident agent on whom service of process might be had, and declare that any violation thereof shall constitute a misdemeanor, etc. Held, that an answer to a complaint by a foreign corporation to foreclose a mechanic's lien alleging that plaintiff was a foreign corporation, and had not complied with the laws of the state relating to foreign corporations, in that it had not filed in the Secretary of State's office a duly authenticated copy of its charter, and had not appointed a resident agent on whom service of process might be made, and filed a duly authenticated copy of such appointment, stated a complete defense, though the action was founded on a contract for materials made in the state of the corporation's residence.

(Opinion filed Aug. 2, 1905)

Appeal from circuit court, Turner county; Hon. E. G. SMITH, Judge.

Action by the Iowa Falls Manufacturing Company against Percy Farrar. From a judgment overruling a demurrer to a paragraph in defendant's answer, plaintiff appeals. Affirmed.

*Porter & King,* for appellant.

The law defining the duties of foreign corporations and fixing the terms upon which they are permitted to do business in this state, upon which respondent relies to defeat this action, is found in chapter 47, page 52 of the Session Laws of 1895. (§§ 883, 884 and 885 of Civil Code), and is entitled 'An Act to Amend Sec. 567 and 569 of the Civil Code, being Secs. 3190 and 3192 of the Compiled Laws of 1887, Relative to the Duties of Foreign Corporations and to Provide Penalties for a Violation of the Provisions of this Act."

In arriving at the construction to be given a statute, one of the prime considerations is, "What was the mischief and defect against which the (former) law did not provide?" Potter's Dwarris Stat. Construction, 184.

The intention of the makers of the statute is sometimes to be discovered from the cause or necessity of making the act. This cause and reason of the act (or in other words, the mischief requiring a remedy) may either be collected from the statute itself, or discovered from circumstances extrinsic of the act, such as the state of the ancient law. The mischief, it has already been stated, may be discovered aliunde, that is to say, the former law may ligitimately be regarded, and the title, preamble and recitals referred to; the remedy is to be collected from the act itself and then the safe and established rule of construction is, that the intention of the lawgiver and the meaning of the law are to be discovered and deducted from a view of the whole and every part of the statute taken and compared together: Potter's Dwarries Stat. Cons., 186-188; Wright v. Lee, 2 S. D. 614.

The necessity which induced the enactment throws further light upon the object sought by the amendment of 1895. By the decision of the Supreme Court in the case of Wright v. Lee, 2 S. D., 596; 4 S. D., 237, and Pech Mfg. Co. v. Groves, 6 S. D., 504,

the law was practically emasculated, the court holding that the
validity and enforcibility of contracts entered into in this state in
violation of the act was not affected thereby; that with the state
alone rested the right to complain of such violation. At the first
session of the legislature, after the final determination of the Wright
case, the legislature undertook to remedy the mischief and give
vitality to the law by the passage of this act, and set forth its object,
and the evil sought to be remedied, in language so plain as to leave
no room for doubt. Fuller & Johnson Mfg. Co. v. Foster, 4 Dak.
335.

    The supreme court has placed a most liberal construction upon
the law. American Button Hole Co. v. Moore, 2 Dak., 280; Fuller
& Johnson Mfg. Co. v. Foster, 4 Dak., 329; Wright v. Lee, 2 S. D.,
596; Pech Mfg. Co. v. Groves, 6 S. D., 504; Acme Mercantile Co.
v. Rochford, 10 S. D., 203; Root v. Sweeney, 12 S. D., 43.

    Again, it is beyond doubt that the somewhat onerous provisions
of section 3 were never intended to apply to foreign corporations
whose only business here was to enforce the collection of claims
against residents of this state.

    The same construction is placed upon the law by the Supreme
Court of Iowa in Ware Cattle Co. v. Anderson, 77 N. W., 1026.
The Iowa law is found in Acts 21st, Gen. Ass., Chap. 76; Sec. 1637-
38-39, page 600, Code of Iowa, 1897.

    Sec. 1638 provides that no corporation, failing to comply with
the provisions of the act "shall exercise any of the rights and privi-
leges conferred upon corporations."

    Sec. 1609, p. 587, enumerates among the rights and privileges
of such corporations, "to sue and be sued by its corporate name."

    The court says in the Ware Cattle Co. case, supra: "That it
has not complied with this law is conceded, but it does not appear

that in making the contract or in bringing this suit, it was acting contrary to the provisions of that statute. * *. * * If their contract had been made in this state, there would be room for argument; but as it was not, they cannot be heard to complan. Appellant had the right to bring suit without complying with the statute." See also White River Lumber Co. v. S. W. Improvement Ass'n., 55 Ark., 625; Del. & Hud. Canal Co. v. Mahlenbrock, 45 L. R. A. 538.  .

L. L. Fleeger .v. J. W. Edmunds for respondent. The revised Code of the state contains the following provisions in regard to foreign corporations. Sec. 883, "No corporation created or organized under the laws of any other state or territory shall transact any business within this state, or acquire, hold, or dispose of property, real, personal, or mixed within this state, or sue or maintain any action at law or otherwise in any of the courts of this state, until such corporations shall have filed in the office of the secretary of state, of this state, a duly authenticated copy of its charter, or articles of incorporation, or shall have complied with the provisions of this section; provided, that the provisions of this section shall not apply to corporations and associations created for religious and charitable purposes only.      .    .                            . .

Sec. 884. Such charter or articles of incorporation shall be recorded in a book to be kept by the secretary of this state for that purpose.                                       .   .  .

Sec. 885. Such corporation shall appoint an agent who shall reside at some accessible point in this state, duly authorized to accept service of process, and upon whom such service of process may be had in any action in which said corporation may be a party, and service upon such agent shall be taken and held as due and personal service upon such corporation. A duly autheticated copy of the appointment of said agent shall be filed and recorded in the office of

the secretary of state, and register of deeds of the county where such agent resides, and a certified copy thereof by the secretary of state or register of deeds, shall be conclusive evidence of the appointment and authority of such agent.

Provided that no. action shall be commenced or maintained in any of the courts of this state by such corporation on any contract, agreement or transaction, made or entered into in this state, by such corporation, unless such corporation shall have fully complied with the provisions of this article.

Provided further, that it shall be unlawful for any person to act within the state as agent or officer of any foreign corporation unless such corporation shall have appointed an agent as hereinbefore provided, and every person so acting as such agent or officer of any such corporation, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than ten nor more than one hundred dollars, and imprisoned in the county jail not less than ten nor more than thirty days, or both such fine and imprisonment, at the discretion of the court. That justices of the peace shall have concurrent jurisdiction with the circuit courts to hear and determine any criminal action arising under the provisions of this act.

The above sections of the law were enacted in their present form in 1895.

The contention of counsel for appellant as we gather it from his brief, is, that the inhibition of the foregoing statutes with reference to bringing suit in our courts without first complying with the requirements of the statute, only applies to foreign corporations that are transacting business in this state, or that own property in this state. And that a foreign corporation that is neither transacting any business in this state nor owns any property in this state, can

bring suit in our courts to enforce contracts entered into outside of the state on transactions made outside of the state, without complying with the provisions of this law. He assumes that the facts in this case bring it within the rule contended for by him, and his whole argument is based upon the assumption that this plaintiff has not, and is not transacting any business in this state and owns no property here. We submit that the facts before this court do not warrant any such assumption. In order to bring him within the rule he contends for we apprehend it would be necessary for him to allege the facts in his complaint which show clearly that the provisions of the foregoing statutes in no way applied to the plaintiff, this he has not done. By demurring to the answer of defendant setting up that plaintiff had failed to comply with the provisions of the law in regard to foreign corporations, by not filing an authenticated copy of their articles of incorporation, etc., he admits the facts alleged in this defense.. This being true, it is necessary for it to affirmatively appear that, even under the rule contended for by him, plaintiff has not and is not in any way violating the provisions of the law above set out.

Under his contention the plaintiff is an exception to the rule, requiring foreign corporations to do certain things before they can maintain an action in our courts. He then should plead the facts which bring it within the exception.

`In view of the above, we earnestly urge upon the Court ·that this case should not be decided upon the assumption that this plaintiff has violated none of the provisions of our law, with reference to ·transacting business in the state or acquiring, disposing of or owning property here.

FULLER, J. The only question presented by this appeal from

an order overruling a demurrer is whether a defense to an action to foreclose a mechanic's lien is stated in the following paragraph of the defendant's answer: "For a further answer to said complaint defendant alleges that plaintiff is a corporation created under the laws of the state of Iowa, having its principal place of business in that state; that it has not complied with the laws of the state of South Dakota relating to foreign corporations, in that it has not filed in the office of the Secretary of State a duly authenticated copy of its charter or articles of incorporation, and it has not appointed an agent residing in this state upon whom service of process may be made, and it has not filed in the office of the Secretary of State of this state a duly authenticated copy of the appointment of such an agent as by laws provided." Upon the theory that the above-mentioned statutory provisions relate exclusively to transactions entered into within this state, it is vigorously contended by counsel that compliance therewith on the part of appellant was unnecessary, because the contract for the building material described in the lien here sought to be foreclosed was made in the state of Iowa. In Bradley, Metcalf & Co. v. Armstrong, 9 S. D., 267, 68 N. W., 733, it is said that: "By the enactment of sections 833, 834 and 835 of the Revised Civil Code, the Legislature has expressly prohibited a nonresident corporation from transacting in this state any business acquiring or disposing of any property, instituting or maintaining any actions at law or otherwise, until such corporation shall have filed in the office of the Secretary of State a duly authenticated copy of its charter or articles of incorporation, and appointed in the manner provided therein a resident agent upon whom service of process may be had. Any violation of this mandatory statute is declared to be a misdemeanor punishable by fine or imprisonment, and justices of the peace are given jurisdiction concurrent with that of the

circuit court." As originally enacted, our statute prohibited the transaction of business or acquisition or disposition of property in this state by a foreign corporation until its articles of incorporation were filed in the manner required at the present time, and an agent with authority to accept service of process was appointed, "who shall reside at some accessible point in the state, in the county where the principal business of said corporation shall be carried on." In a case the same as this, where one of our citizens found a corporation in another state, with which he concluded an isolated transaction, it was very properly held that "a foreign corporation not transacting business in this territory may sue in our courts without having complied with the provisions of sections 567 and 569, Rev. Civ. Code, relating to filing its articles of incorporation and appointment of an agent." Fuller & Johnson Manufacturing Co. v. Foster, 4 Dak. 329, 30 N. W. 166. Having under consideration a statute thus constructed to unconditionally allow foreign corporations to sue our citizens on claims arising in other states, the Legislature of 1895 added, by way of amendment, the further restriction that "no corporation created or organized under the laws of any other state or territory shall * * * sue or maintain actions at law or otherwise in any of the courts of this state, until such corporations shall have filed in the office of the Secretary of State a duly authenticated copy of its charter or articles of incorporation"; and instead of requiring the agent authorized to accept service of process "to reside at some accessible point in this state in the county where the principal business of such corporation shall be carried on," the amendment merely provides that "he shall reside in some accessible point in this state: * * * provided, further, that no action shall be commenced or maintained in any of the courts of this state by such corporation on any contract; agreement or transaction made or en-

tered into in this state, by such corporation, unless such corporation shall have fully complied with the provisions of this article."

In requiring the filing of corporate articles and the appointment of an agent as a condition precedent to the commencement of an action in any court of this state by a foreign corporation to enforce a claim arising in another state, the Legislature has used the plainest of words in sentences free from ambiguity, and whether an action is maintainable on account of a transaction entered into in this state by such corporation prior to complying with the statute is a question not now presented for determination, and concerning which no opinion is expressed. However, it is noticeable that section 883 of the Revised Civil Code provides generally that no action is maintainable by a foreign corporation until its articles are filed and an agent appointed, while section 885 specifies that no action is maintainable "on any contract, agreement, or transaction made or entered into in this state by such corporation, unless such corporation shall have fully complied with the provisions of this article." Quite uniformly foreign corporations are expressly prohibited by a constitutional provision or legislative enactment from carrying on business in states where they are not domiciled unless they have first complied with conditions similar to the requirements of our statutes; but a thorough research discloses but few decisions based upon a provision like ours, where in express terms every foreign corporation is required to file its articles and appoint an agent before it can maintain any action at law or otherwise in any of the courts of this state. Inferentially, the suggestion is made by counsel for the corporation that the foregoing statute, literally construed, interferes with interstate commerce by depriving their client of its constitutional right to maintain an action for the enforcement of a contract made beyond the boundaries of this state, and it must be

conceded from the nature of the transaction in controversy that appellant was engaged in interstate commerce. Plainly, the provision for the appointment of an agent upon whom service of process may be made does not infringe upon the right of a foreign corporation to sue in the courts of this state, and the requirement that its articles of incorporation be filed before commencing an action is just what domestic corporations must do for the protection of the public, and as a matter of practice which in no manner interferes with commercial intercourse between states. Failure to appoint an agent and file the articles of incorporations does not render the contract for building material void, but merely suspends appellant's right to commence or maintain an action for the foreclosure of its lien until the statute is complied with. Daly v. Ins. Co., 64 Ind. 1. In the case of The State v. American Book Co., 65 Kan. 847, 69 Pac. 563, the court say: "The claim that because the defendant company is engaged in interstate trade it cannot be subjected to the regulations of the law of 1898 is untenable. It may be that it cannot be excluded from doing business here, but it can be laid under such reasonable conditions as the filing of its charter, the payment of charter fees, the making of reports and furnishing of information concerning its business, the appointment of agents to receive service of process, etc. These are not burdens on the company; they are measures of justice and protection to the people of the state." In imposing the statutory penalty upon a corporation engaged in interstate commerce for the violation of a provision similar upon principal to ours, it was decided by the United State Supreme Court to be neither a regulation of interstate business nor an infringement upon the exclusive power of Congress to require railroad companies to post up their passenger and freight rates for the information of the public. R. R. Co. v. Fuller, 17 Wall. 560. We quote from the

case of Ashley v. Ryan, 153 U. S. 436, as follows: "At the present day corporations are multiplied to an almost indefinite extent. There is scarcely a business pursued, requiring the expenditure of a large capital or the union of large numbers, that is not carried on by corporations. It is not too much to say that the wealth and business of the country are to a great extent controlled by them. And if, when composed of citizens of one state, their corporate powers and franchises could be exercised in other states without restriction, it is easy to see that, with the advantages thus possessed, the most important business of those states would soon pass into their hands. The principal business of every state would in fact be controlled by corporations created by other states. It follows from these principles that a state, in granting a corporate privilege to its own citizens, or, what is equivalent thereto, in permitting a foreign corporation to become one of the constituent parts of a consolidated corporation organized under its laws, may impose such conditions as it deems proper, and that the acceptance of the franchise in either case implies a submission to the conditions without which the franchise could not have been obtained. In Paul v. Virginia, 8 Wall. 168, 19 L. Ed. 357, the court said: 'Having no absolute right of recognition in other states, but depending for such recognition and the enforcement of its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those states may think proper to impose. They may exclude the foreign corporations entirely. They may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest.'" Section 1283 of the General Statutes of Kansas 1901 provides that: "It shall be the duty of the president and secretary or of the man-

aging officer of each corporation for profit doing business in this state, except banking, insurance and railroad corporations, annually on or before the 1st day of August, to prepare and deliver to the Secretary of State a complete detailed statement of the condition of such corporation on the 30th day of June next preceding. * * * No action shall be maintained or rocevery had in any of the courts of this state without first obtaining the certificate of the Secretary of State that statements provided for in this section have been properly made." In sustaining the above statute in a case like this the court say: "It may be said that the question here is not the power of the state of Kansas to lay a charge on interstate commerce, or to prevent a foreign corporation from engaging in interstate commerce within its confines, but simply the right of the state to determine upon what conditions its laws as to the enforcement of rights through its courts may be availed of. The part of the statute under consideration lays no embargo or burden upon interstate commerce. It does not seek to prevent or hamper the transactions of corporations engaged in that business. It does not declare their contracts void, or deny them the enforcement of any rights whatever. It merely provides that, if they wish to make use of the machinery of the state courts for their own benefit, they must do so upon the same terms as other corporate suitors. In this we find no interference with the powers reserved to Congress by the federal Constitution." Deere v. Wyland, 69 Kan. 255, 76 Pac. 863.

Without any distinction as to isolated or multifarious corporate transactions it was held in Bradley, Metcalf & Co. v. Armstrong, supra, that a foreign corporation is expressly prohibited from instituting or maintaining any action at law or otherwise until the statutory requirements have been answered, and upon that case and the law here enunciated the order appealed from is affirmed.