## SIOUX REMEDY CO. v. COPE et al.

The rule which holds that a judgment correct on the merits will be affirmed, even though based on an erroneous ground in the trial court, should be applied only when the merits of the cause are clear.

Where it is contemplated by the parties to a contract that, as a part of the transaction, the goods concerning which the contract is made shall be shipped from one state to another, the contract is one pertaining to interstate commerce, within the inhibition prohibiting interference on the part of the state, regardless of whether the contract is one of purchase, sale, or bailment; the test being whether, as part of the performance of the contract, it is contemplated that there should be a shipment from one state to another of the identical goods to which the contract relates.

Where a contract between a foreign corporation and defendants, residents of the state, pertained to the shipping of goods ordered by defendants from plaintiff from another state to defendants' place of

business within the state, it involved interstate commerce, without reference to whether defendants were purchasers or mere agents for plaintiff, the consignor.

A supreme court should overrule an erroneous prior decision, unless, under such former ruling, some rule of property has become long established, an overturning of which would work great wrong to those who have relied on the law as declared.

Civ. Code, § 883, provides that no foreign corporation shall transact any business within the state, or "sue or maintain any action in any of the courts" of the state, until it shall have filed a copy of its charter or articles of corporation with the Secretary of State. Section 885 provides that such corporation shall appoint a resident agent, authorized to accept service, etc., and that no action shall be maintained in any courts of the state by such corporation on any contract made in the state, unless it shall have complied with the provisions of the article. **Held** that, while such act did not apply, so far as to invalidate contracts and transactions made between citizens and foreign corporations which constituted interstate commerce, the statute, in so far as it prohibited such foreign corporations from resorting to the courts of the state for the enforcement of such contracts, though valid, without their having complied with the requirements for the filing of their articles, etc., was a proper exercise of the state's police power, and was not unenforceable as to such transactions as an invalid regulation of interstate commerce.

Civ. Code, §§ 883, 885, in so far as they prohibit a foreign coporation, not having complied with the laws of the state, from maintaining any action on any contract made within the state, in so far as it relates to interstate commerce, should be construed, not as invalidating the contract, but as a mere exercise of the state's right to place reasonable conditions on the right of any person or corporation to use its courts.

The federal Constitution and acts of Congress regulating interstate commerce confer on a corporation of one state the right to engage in interstate commerce in another state, free from every prohibition and condition imposed by the latter, and to exercise all corporate powers necessary for the transaction of such business, without permission granted or condition imposed by the state in which the contract or transaction occurs, and the absolute right to institute and maintain in the federal courts, and to remove to those courts for trial and decision, its suits in every other state, in the cases and on the terms prescribed by the acts of Congress, but do not confer on such corporation the right to sue in the state courts without complying with the laws of the state, specifying the terms on which such suits may be maintained.

Corson J., dissenting.

(Opinion filed, December 11, 1911.)

Appeal from Circuit Court, Turner County. Hon. ROBERT B. TRIPP, Judge.

Action by the Sioux Remedy Company against F. M. Cope and another. Judgment for defendants, and plaintiff appeals. Affirmed.

*Joe Kirby,* for appellant.

That a state law which would prevent a party engaged in interstate commerce from maintaining an action for the subject thereof, in the courts of this state would be an interference with the prerogatives of congress. Flint & Walling Mfg. Co. v. McDonald, 21 S. D. 526; Rex Buggy Co. v. Dinneen, 23 S. D. 494, 122 N. W. 433; Sioux Remedy Co. v. Lindgren, 27 S. D. 123; Sucker State Drill Co. v. Wirtz Bros., 115 N. W. 844; Butler Bros. Shoe Co. v. U. S. Rubber Co., 156 Fed. 1.

*Bogue & Bogue,* for respondents.

A foreign corporation, engaged in interstate commerce, cannot maintain an action in the courts of this state, until it has complied with the provisions of sections 883 and 885 of the Civil Code of this state. Wilson-Moline Buggy Co. v. Hawkins, 101 Pac. Rep. 1009; John Deere Plow Co. v. Wiland (Kan.) 79 Pac. Rep. 863; Deere v. Wiland, 69 Kan. 255; Union Stock Yards Nat. Bank v. Bolan, 93 Pac. 508; R. R. Co. v. Fuller, 17 Wall. 560; Ashley v. Ryan, 153 U. S. 436; Cooper Mfg. Co. v. Ferguson, 28 L. Ed. 1137.

WHITING, J. Plaintiff sued to recover the amount claimed to be due upon the purchase price of certain goods alleged to have been sold defendants. The record before us does not disclose the contents of the pleadings, except that it does appear that the defendants, in their answer, set forth the contract under which they received the goods from the plaintiff. This contract, except as to name of the party of the second part, is identical with the contract before this court in the case of Sioux Remedy Co. v. Lindgren, 27 S. D. 123, 130 N. W. 49. When the cause was called for trial, one of the defendants, called as a witness for plaintiff, testified to the executing of the contract at Centerville, S. D., and to the receiving of the goods thereunder; the contract was then received

in evidence, and plaintiff rested. The parties then stipulated that plaintiff was a foreign corporation, and had not complied with the provisions of sections 883-885 of the Revised Civil Code of this state. "Thereupon defendants moved the court to direct a verdict for the defendants for the reason as shown by said stipulation." This motion was granted, verdict rendered and entered, and plaintiff duly excepted. Judgment was rendered upon such verdict, and plaintiff appealed.

It is well to note that the cause now before us was before the trial court prior to the decision in the Lindgren Case, wherein, under facts exactly like those in this case, this court held the transaction sued on to be one pertaining to interstate commerce, and therefore that it was not controlled by the sections of our statute above referred to. Respondent contends that this court did not hold in the Lindgren Case that the transaction was one pertaining to interstate commerce, but merely said: "Assuming in the case at bar that the plaintiff was a foreign corporation, and was engaged in the business of selling merchandise, it cannot be required to file its articles," etc. Respondent has apparently overlooked that part of the opinion wherein it was said: "It is contended by the appellant that this contract of sale constitutes interstate commerce, and therefore the plaintiff was not required to file its articles of incorporation or appoint a resident agent, as provided by the Civil Code of this state, in order to entitle it to maintain this action. We are of the opinion that the plaintiff [appellant] is right in this contention."

Respondents further contend that, even construing the Lindgren Case as having held that the transaction before the court therein was interstate commerce, yet, in the case now at bar, the judgment should be affirmed, because it is sustainable, under the record herein, upon other grounds than the one considered and passed upon in the Lindgren Case: First, because the contract in question is a commission contract, and not one of sale; second, because, for a reason not considered by this court in the Lindgren Case, the transaction before the court was one not pertaining to interstate commerce.

[1] This court held, in the Lindgren Case, that the contract then before the court—whether construed as it read, regardless of other matters, or whether construed in the light of the surrounding circumstances—was clearly an agency contract, under which the second party was not liable, unless he sold some goods and retained the money. Relying upon such construction of the contract, respondents point out that it was incumbent upon plaintiff, as a part of its case, to have proven facts which, under such contract, would create a liability, and that, not having done so, the verdict and judgment were right, regardless of the correctness of the grounds upon which such verdict was in fact directed. While conceding the soundness of the rule of law which holds that a judgment correct on the merits should be affirmed, even though it were based, in the trial court, upon an erroneous ground, yet we think it should be applied only when the merits of the cause are clear, and not under a record such as we have before us in the case at bar. Only one question was presented to the trial court, and the appellant has brought to this court only such record as was necessary for the review of the trial court's ruling. As before noted, we have not the pleadings before us, and it may be that the answer therein admits a purchase of the goods, or admits that as agents they had sold some of the goods. These were facts entirely immaterial upon a motion for direction of verdict, based upon the ground upon which the motion herein was based, and appellant was in no manner required to anticipate a claim, not raised in the lower court, and fill its record with matters not pertinent to the ruling of the court. We have no way of knowing whether the judgment was correct upon the merits of the issues as raised by the pleadings.

In support of the second ground urged by respondents, it is argued that, inasmuch as under the contract, "the defendants were agents for the plaintiff, not for the purpose of soliciting orders for the plaintiff and sending them to the corporation outside of the state, but for the purpose of receiving, at the agents' place of business in South Dakota, the goods described in the contract, and

Vol. 28 S. D. 26.

then selling them to the customers of the agents in South Dakota," the appellant was not engaged in interstate commerce. Respondents have cited many authorities in support of the above statement, but it seems to háve escaped respondents' attention that the opinions in these cases are not directed to the question of the nature of the contract as between the principal and agent. These authorities clearly support the proposition that, if this appellant were suing one who had purchased of the respondents some of these consigned goods, and was seeking to recover the selling price, such suit would be based upon a transaction purely intrastate, and the purchasers could rightfully plead appellant's noncompliance with said sections 883-885.

[2, 3] But the authorities all hold that, where it is contemplated by the parties to a sale, or to any other contract, no matter · what its nature, that, as a part of the transaction or a necessary incident thereto, the goods, concerning which the contract is made, are to be shipped from one state to another, the transaction or contract is one pertaining to interstate commerce, and comes under the inhibition prohibiting interference, on the part of the state, with such commerce. 'It matters not whether the contract be one under which a party is to buy goods, or to sell them, or to rent them; the sole question is whether or not, as a part of the carrying out of such contract, it is contemplated that there shall be a shipping from one state to another of the identical goods to which the contract relates. So far as the parties hereto are concerned, the contract in question pertained to interstate commerce—to the shipping of the goods ordered—whether the consignees were purchasers, or whether they were merely agents of the consignor. A transaction very like the one before us was under consideration in Butler Bros. Shoe Co. v. United States Rubber Co., 156 Fed. 1, 84 C. C. A. 167, wherein that court said:

"The contract of January, 1903, when reduced to its lowest terms, was that for one year the complainant would send on the orders of the defendant from · its factory and warehouse in the Eastern states shoes, boots, and rubber goods to the shoe company in Colorado, that the latter would make such advances to the com-

plainant.as it requested and would conduct the business and pay
all the expenses of selling the goods for the factorage or commis-
sion, which consisted of the difference between the agreed prices
between the parties to the contracts and the selling prices to the
purchasers from the factor. The question has been exhaustively
argued whether this was a contract for a conditional sale or a
contract of agency. It did not evidence a conditional sale, because
there was no obligation of the rubber company to transfer the
title to the shoe company for an agreed price, and no obligation
of the shoe company to pay an agreed price for the goods. It
was a contract of bailment for sale, not a contract of sale. In re
Columbus Buggy Co., 143 Fed. 859, 74 C. C. A. 611. It was a
contract of factorage. * * * Nor is the fact that these con-
tracts did not evidence sales of the goods determinative of this
question. A sale is not the test of interstate commerce. All sales
of sound articles of commerce, which necessitate the transporta-
tion of the goods sold from one state to another, are interstate
commerce; but all interstate commerce is not sales of goods. Im-
portation into one state from another is the indispensable element,
the test, of interstate commerce; and every negotiation, contract,
trade, and dealing between the citizens of different states, which
contemplates and causes such importation, whether it be of goods,
persons, or information, is a transaction of interstate commerce.
'Since the case of Gibbons v. Ogden, 9 Wheat. 1, 6 L. Ed. 23,'
said Chief Justice Waite, in Pensacola Telegraph Co. v. Western
Union Telegraph Co., 96 U. S. 8, 24 L. Ed. 708, it has never been
doubted that commercial intercourse is an element of commerce
which comes within the regulating power of Congress.' The
contracts before us constituted and caused commercial intercourse
between citizens of different states. Their chief purpose and their
principal effect were the importation of sound articles of com-
merce into the state of Colorado from other states, and they neces-
sarily constituted transactions of interstate commerce. Caldwell v.
North Carolina, 187 U. S. 622, 23 Sup. Ct. 229, 47 L. Ed. 336;
Wagner v. Meakin, 92 Fed. 76, 33 C. C. A. 577, 581, 584; Allen
v. Tyson-Jones Buggy Co., 91 Tex. 22, 40 S. W. 393, 714;
Chattanooga, R. & C. R. Co. v. Evans, 66 Fed. 809, 814, 14 C. C.

A. 116; Gunn v. White Sewing Machine Co., 57 Ark. 24, 20 S. W. 591, 18 L. R. A. 206, 38 Am. St. Rep. 223; Keating Implement & Machinery Co. v. Favorite Carriage Co., 12 Tex. Civ. App. 666, 35 S. W. 417."

[4] As a final ground upon which respondents ask an affirmance of the judgment, they most earnestly urge that the trial court was right in holding that said sections 883-885 apply to this transaction, and that this court was in error in holding to the contrary in the Lindgren Case. Every court should be free to acknowledge its errors, and should hasten to correct the same, except when under a ruling of the court some rule of property has become long established and fixed, an overturning of which would work great wrong to those who have relied on the law as declared. The decision in the Lindgren Case neither involves a rule of property, nor is such decision of long standing. This court, in the case of Iowa Falls Mfg. Co. v. Farrar, 19 S. D. 632, 104 N. W. 449, in the year 1905, without dissent, held unequivocally that said sections 883-885 did apply to contracts pertaining to interstate commerce, and the reasoning of the learned justice who wrote that opinion seems to us unanswerable. While not trying to excuse the error into which this court fell in the Lindgren Case, it is perhaps explainable largely, in that the conclusion reached in that case was clearly correct upon another ground discussed, which led us to not as carefully consider the question now before us as we should have done, if such decision had depended solely upon the determination of the proposition now before us. It was the contention of the respondent in the Lindgren Case that no question of interstate commerce was involved therein; and, furthermore, that the contract was one of agency. It will thus be seen that no issue was raised by the respondent, in the Lindgren Case, in regard to the validity of the provisions of said sections 883-885, when applied to interstate commerce, and, holding as we did, that the contract was one of agency, and the evidence clearly showing that there was nothing due appellant thereunder, we were in no manner required to consider the question now before us, and were not aided, in our consideration of the same, by any.

briefs or argument in support of the validity of such sections when applied to interstate commerce.

[5] Said sections 883-885 read as follows:

"Sec. 883. No corporation created or organized under the laws of any other state or territory shall transact any business within this state, or acquire, hold and dispose of property, real, personal or mixed, within this state, or sue or maintain any action at law or otherwise, in any of the courts of this state, until such corporation shall have filed in the office of the Secretary of State a duly authenticated copy of its charter or articles of incorporation, or shall have complied with the provisions of this section; provided, that the provisions of this section shall not apply to corporations and associations created for religious and charitable purposes only.

"Sec. 884. Such charter or articles of incorporation shall be recorded in a book to be kept by the Secretary of State for that purpose.

"Sec. 885. Such corporation shall appoint an agent who shall reside at some accessible point in this state, duly authorized to accept service of process and upon whom such service of process may be had in any action in which said corporation may be a party, and service upon such agent shall be taken and held as due and personal service upon such corporation. A duly authenticated copy of the appointment of said agent shall be filed and recorded in the office of the Secretary of State and register of deeds of the county where agent resides, and a certified copy thereof by the Secretary of State or register of deeds shall be conclusive evidence of the appointment and authority of such agent: Provided, that no action shall be commenced or maintained in any of the courts of this state by such corporation on any contract, agreement or transaction made or entered into in this state, by such corporation, unless such corporation shall have fully complied with the provisions of this article; provided, further, that it shall be unlawful for any person to act within this state as agent or officer of any foreign corporation unless such corporation shall have appointed an agent as hereinbefore provided, and every person so acting as

such agent or officer of any such corporation shall be fined not less than ten nor more than one hundred dollars and imprisoned in the county jail not less than ten nor more than thirty days, or both such fine and imprisonment at the discretion of the court. That justices of the peace shall have concurrent jurisdiction with the circuit courts to hear and determine any criminal action arising under the provisions of this act."

This appellant, in the Lindgren Case, cited, in support of the proposition that our statute had no application to contract pertaining to interstate commerce, the following authorities: Flint & Walling Mfg. Co. v. McDonald, 21 S. D. 526, 114 N. W. 684, 14 L. R. A. (N. S.) 673, 130 Am. St. Rep. 735; Rex Buggy Co. v. Dinneen, 23 S. D. 474, 122 N. W. 433; Herman Bros. Co. v. Nasciacos, 46 Colo. 208, 103 Pac. 301; McNaughton Co. v. Mc-Girl, 20 Mont. 124, 49 Pac. 651, 38 L. R. A. 367, 63 Am. St. Rep. 610; Ware v. Hamilton-Brown Shoe Co., 92 Ala. 145, 9 South. 136; Coit & Co. v. Sutton, 102 Mich. 324, 60 N. W. 690, 25 L. R. A. 819; Greek-American Sponge Co. v. Richardson Drug Co., 124 Wis. 469, 102 N. W. 888, 109 Am. St. Rep. 961; Atlas Engine Works v. Parkinson (D. C.) 161 Fed. 223; Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137; Sucker State Drill Co. v. Wirtz, 17 N. D. 313, 115 N. W. 844, 18 L. R. A. (N. S.) 134; Norfolk & W. R. Co. v. Sims, 191 U. S. 441, 24 Sup. Ct. 151, 48 L. Ed. 254; Ammons v. Brunswick-Balke-Collender Co., 141 Fed. 570, 72 C. C. A. 614; Butler Bros. Shoe Co. v. United States Rubber Co., 156 Fed. 1, 84 C. C. A. 167. The opinion in the Lindgren Case calls attention to the fact that the case of Flint, etc., v. McDonald, supra, had no bearing upon the question then before the court, but all the other cases supra were cited in the opinion as supporting the contention of the appellant. We think a careful analysis of these decisions will show that not a single one is in point; that even those that might at first blush seem to support appellant's contention are based upon statutes so radically different from ours that they can have no effect as authority, even under the rule of analogy. In Sucker State Drill Co. v. Wirtz, as was said by the court, "The sole ques-

tion raised upon this appeal involves the validity of the contract under which the drills were sold." It is not the validity of the contract which is questioned in the case at bar; its validity is unquestioned; the question is as to the enforceability of it at the time action was brought. In McNaughton v. McGirl, Atlas Engine Works v. Parkinson, and Cooper v. Ferguson, the validity of the contract was the sole question. The state of Michigan has a statute requiring foreign corporations to pay a franchise fee, and declaring all contracts made by them void until such fee is paid. As will be noted, this statute goes to the validity of the contract, and for that reason, in Coit v. Sutton, it was held that it did not apply to interstate commerce transactions. In fact, the courts uniformly hold that any law attempting to lay a tax on interstate commerce is invalid. The Michigan case, however, directly recognizes the right of the state, by virtue of its police power, to place restraint upon interstate commerce.. Norfolk & W. Ry. Co. v. Sims was also a case construing a statute, which attempted to tax through the requirement of a license or franchise fee. Ware v. Hamilton-Brown Shoe Co. is clearly not in point. Ammons v. Brunswick-Balke-Collender Co. was a case wherein arose no question of interstate commerce, and in which the statute under consideration was a federal one. In Greek-American Sponge Co. v. Richardson Drug Co., the court had before it the statute of Wisconsin, providing for the filing of articles of incorporation of foreign corporations in the office of the Secretary of State, which statute provides: "Every contract made by or on behalf of any such association, company, corporation or copartnership affecting the personal liability thereof or relating to property within this state, before it shall have complied with the provisions of this section, shall be wholly void on its behalf and on behalf of its assigns, but shall be enforceable against it or them." Thus, again, we have a statute affecting the validity of contracts, and which was held to be invalid as applied to interstate commerce.

[6] It might be contended that, under the construction placed by this Court upon the "proviso" in section 885 of our statute, such section affects the validity of the contract, instead of merely going

to the right of action, as is clearly provided by section 883 (American Copying Co. v. Eureka Bazaar, 20 S. D. 526, 108 N. W. 15), and that such proviso, under several of the above authorities, would be invalid, so far as contracts involving interstate commerce are concerned. In answer we would state that, if the holding in the Bazaar Case is sound, it must necessarily follow that, under some of the above authorities, such part of section 885 would not apply to transactions pertaining to or involving interstate commerce; yet it leaves section 883 in full force. Paraphrasing the words of the territorial court, in American Button Hole Co. v. Moore, 2 Dak. 280, 8 N. W. 131: "The right to have contracts enforced upon trial is one thing, but the right to sue and be heard is another and quite a distinct matter." We maintain that, while it might be held that no state statute can affect the validity of a contract pertaining to interstate commerce, and therefore cannot deny the right to have such contract enforced, if it is otherwise valid, yet the state, under its police power, does have the right to place reasonable conditions upon the right of any person or corporation to use its courts. Furthermore, the writer of this opinion, although he concurred in the majority opinion of this court in the case of Reed v. Todd, 25 S. D. 421, 127 N. W. 527, in which opinion there is dictum supporting the construction of the proviso of section 885 found in the Bazaar Case, does not agree with such dictum, and concurs fully with the views of Justice Corson, as expressed in his most able dissenting opinion in the Bazaar Case.

The opinion in the Lingren Case placed apparently great weight upon Butler Bros. Shoe Co. v. United States Rubber Co., as an authority supporting appellants' contention. The decision in such case is certainly a most able one; but there was not involved therein the question now before us, and it contains not one syllable in any way touching such question. The court was called upon to construe the Colorado statute. It is well to consider the provisions of such statute as it was also before the court in the case of Herman Bros. Co. v. Nasiacos. Quoting from the Shoe Co. Case, we learn that: "The Constitution and the statutes of Colo-

rado by their terms prohibit any foreign corporation from doing
any business, exercising any corporate power, acquiring or holding
any property, or prosecuting or defending any suit in the state,
unless it has first filed with the Secretary of State a certificate of
its incorporation, a written appointment of an agent in the state
to accept service of process, and a written specification of a prin-
cipal place of business in the state, has paid to the Secretary of
State $30 for the first $50,000, and 50 cents for each additional
$1,000 of its capital stock, a fee of $5, and numerous other fees
for filing papers and issuing his certificate, and has paid to the
Auditor of the State an annual license fee of 2 cents for each
$1,000 of its capital stock. Const. Colo. art. 15, § 10; 1 Mills'
Ann. St. §§ 499, 500; Sess. Laws Colo. 1901, p. 121, c. 52, § 10;
Sess. Laws 1902, p. 73, c. 3, § 64. The statutes of Colorado
further provide that a failure to file this certificate of incorpora-
tion shall render each officer, agent, and stockholder of a foreign
corporation liable for all contracts made in Colorado while it is in
default (1 Mills' Ann. St. § 501), and that a failure to pay the
annual license tax shall deprive the corporation absolutely of all
rights and privileges to do business in the state, and shall consti-
tute an absolute defense to all actions, suits, and proceedings in
law or equity brought by the corporation in any court of compe-
tent jurisdiction within the limits of the state, until the tax is paid
Sess. Laws Colo. 1902, p. 74, c. 3, § 66. It is obvious that by the
literal terms of this Constitution and these statutes no foreign cor-
poration may lawfully exercise any corporate power, maintain any
suit in any state or federal court, or do any business of any kind
whatever in the state of Colorado, unless it first pays the license
fees which that state has prescribed for permission to do business
therein." The above shows how different a statute that of Colo-
rado is from the one before us for construction. An examination
of chapter 52, Session Laws Colo. 1901, reveals that its title is as
follows: "An act relating to corporations, and prescribing certain
fees to be paid by corporations, foreign and domestic, and to repeal
certain acts and all acts and parts of acts in conflict herewith."
A reading of the act in full shows that its one purpose is the rais-
ing of revenue; that while fees, large and small, are imposed for

almost everything, and while the payment of these fees is made a condition precedent to the doing of business or the resorting to the courts, yet there is not one provision of such statute, requiring the appointment of an agent, or the performance of any act, the effect of which would be to give an opportunity to bring foreign corporations into court, that is made a condition precedent to doing business or bringing actions.

[7] Justice Sanborn, in the Shoe Case, lays down the following, with which we fully concur: "The Constitution of the United States and the acts of Congress in pursuance thereof are the supreme law of the land. Under that Constitution and those laws, a corporation of one state has at least three absolute rights which it may freely exercise in every other state in the Union, without let or hindrance from its legislation or action: (1) Every corporation, empowered to engage in interstate commerce by the state in which it is created, may carry on interstate commerce in every state in the Union, free of every prohibition and condition imposed by the latter. Pensacola Telegraph Co. v. Western Union Telegraph Co., 96 U. S. 1, 8, 24 L. Ed. 708; Cooper Manufacturing Co. v. Ferguson, 113 U. S. 727, 736, 737, 5 Sup. Ct. 739, 28 L. Ed. 1137. * * * (2) Every corporation of any state in the employ of the United States has the right to exercise the necessary corporate powers and to transact the business requisite to discharge the duties of that employment in every other state in the Union, without permission granted or conditions imposed by the latter. Pembina Mining Co. v. Pennsylvania, 125 U. S. 181, 186, 8 Sup. Ct. 737, 31 L. Ed. 650; Horn Silver Mining Co. v. New York, 143 U. S. 305, 315, 12 Sup. Ct. 403, 38 L. Ed. 164. (3) Every corporation of each state has the absolute right to institute and maintain in the federal courts, and to remove to those courts for trial and decision, its suits in every other state, in the cases and on the terms prescribed by the acts of Congress. Insurance Co. v. Morse [20 Wall.] 445, 453, 456, 22 L. Ed. 365; Barron v. Burnside, 121 U. S. 186, 200, 7 Sup. Ct. 931, 30 L. Ed. 915." And by way of summing up, Justice Sanborn further said: "The unavoidable result is that, if the Constitution and the stat-

utcs of Colorado are to be interpreted to mean, as they clearly read, to prohibit every foreign corporation from exercising any corporate power whatever, or doing any business whatever, in the state, unless they pay the fees and the annual license tax which this legislation requires as a condition thereof, they are unconstitutional and void, so far as they apply to interstate commerce conducted by foreign corporations, or suits for and against them in the *national courts.*"

All that was held in the Herman Bros. Co. Case is that the provision of the Colorado statute above referred to does not apply to foreign corporations engaged solely in interstate commerce, citing International Trust Co. v. Leschen, 41 Colo. 299, 92 Pac. 727, where the question involved was the right of the state to require the payment of the fees provided by said chapter 52, Laws Colo. 1901, as a condition for doing business or resorting to the courts of such state. The case of Rex Buggy Co. v. Dinneen, decided by this court and cited in the Lindgren Case, was one in claim and delivery to recover goods virtually stolen from plaintiff in the state of Iowa, brought into this state and sold to defendant. While plaintiff had not filed its articles at time of action brought, it had fully complied with the law before answer. Remembering that failure to file articles of incorporation is raised by a plea in abatement, and in no manner affects the merits, we believe there were, in the Buggy Co. Case, good grounds for affirming the trial court, without basing such affirmance upon any question of interstate commerce.

From what we have said above, it is clear that the holding in the Lindgren Case receives no support from the authorities cited therein, and we have been unable to find one single authority supporting its holding.

What is meant when it is said that "every corporation, empowered to engage in interstate commerce by the state in which it is created, may carry on interstate commerce in every state in the Union, free of every prohibition and condition imposed by the latter" (Shoe Co. Case, supra)? Viewing this statement in the light of the decisions of the courts, state and national, there should

be added thereto, "except reasonable police regulations." Rail-
roads are certainly engaged in interstate commerce, their business
being of the very essence of such commerce, to-wit, the trans-
ferring of the subject of such commerce from one state to an-
other; and yet how frequently courts have sustained state regula-
tions affecting directly such business of transportation. As was
said by the Supreme Court of Illinois, in the case of People v.
Chicago, etc., R. Co., 223 Ill. 581, 79 N. E. 141, 7 Am. & Eng.
Ann. Cas. 1: "A state, under its inherent and reserved police
power, may enact any law promotive of the peace and good order
of society, for the preservation of life and health, or conducive to
the comfort, convenience, and welfare of the people. It is no valid
objection that such law operates on the subjects and means of
interstate commerce and persons engaged therein, unless, in this
effect, it lays some burdens or restrictions thereon which other-
wise would not exist. Thus states may exclude animals having
contagious diseases. Reid v. Colorado, 187 U. S. [137, 23 Sup.
Ct. 92, 47 L. Ed. 108]. They may prohibit the consolidation of
competing or parallel lines of railroad. Louisville, etc., R. Co. v.
Kentucky, 161 U. S. 677, 16 Sup. Ct. 714 [40 L. Ed. 849]. They
may compel the erection and maintenance of fences and cattle
guards. Minneapolis, etc., R. Co. v. Emmons, 149 U. S. 364, 13
Sup. Ct. 870 [37 L. Ed. 769]. They may compel engineers oper-
ating freight and passenger engines to have their eyes examined.
Smith v. Alabama, 124 U. S. 465, 8 Sup. Ct. 564 [31 L. Ed. 508].
They may provide for the separation of white and colored races
on trains (Louisville, etc., R. C. v. Mississippi, 133 U. S. 587, 10
Sup. Ct. 348 [33 L. Ed. 784], and prohibit the running of freight
trains on Sunday (Hennington v. Georgia, 163 U. S. 299, 16 Sup.
Ct. 1086 [41 L. Ed. 166]). In all these cases, and many others
of like character, the state laws in question operated either on sub-
jects or means of or the persons engaged in interstate commerce,
and they were sustained on the ground that they were properly
within the reserved powers of the state, and did not, in their
effect and intention, operate, except incidentally, as a restriction or
burden on commerce between the states. These cases, and others
in line with them, recognize the right of the state to adopt such

laws as, in the wisdom of the Legislature, will subserve the best interests of the people, and enforce them against all persons and corporations that come within the territorial jurisdiction, subject to the limitation that no restrictions or burdens shall be laid on interstate commerce. It follows that all the powers which inhere in the people of a state, and which have not been expressly granted to the United States, and not prohibited to the states, still reside with the people with respect to common carriers of interstate commence, as well as to persons and companies engaged in other lines of business."

In the case of Commonwealth v. Chesapeake & O. Ry. Co., 101 Ky. 159, 40 S. W. 250, we have one wherein was presented a question very analogous to the one before us. The court was called on to construe a statute requiring every railroad operating in the state under a contract or lease "to have the same recorded in the office of the Secretary of State and in the county clerk's office of every county in which the road or any part thereof lies. * * *" The court said: "Counsel, erroneously, as we think, argue section 791 is in violation of the Constitution of the United States, because interfering with interstate commerce; for adoption of it by the General Assembly is plainly a proper and legitimate exercise of police power, belonging to each individual state, and necessary for the general welfare of the citizens thereof. The manifest purpose of the statute is to ascertain and identify the company having legal possession and control of each particular line of railroad within the state, in order, first, that taxes and public dues may be more readily and certainly collected, and obedience to law more effectually enforced; second, that persons having business intercourse with common carriers may know with whom to deal, or, if wronged or injured, may know against whom to seek remedy. In what way enforcement of such statute can possibly interfere with the power of Congress to regulate commerce between the states we are unable to conceive."

We must bear in mind at all times that the statute before us is the enactment of the legislative body of a sovereign state, a state whose only limitation of legislative power is to be found in

its own Constitution, or that of the national government; there is every presumption supporting the validity of its laws. The greatest power of all those reserved by the people for their state government is comprised within the term "police power." We quote again the definition of that great jurist, Justice Shaw, who defined it as: "The power vested in the Legislature by the Constitution to make, ordain, and establish all manner of wholesome and reasonable laws, statutes, and ordinances, either with penalties or without, not repugnant to the Constitution, as they shall judge to be for the good and welfare of the commonwealth and of the subjects of the same." The federal power over interstate commerce is subject to the police power of the state when properly exercised. Who would question but what our statutes aimed at the prevention of frauds, our recording laws, our anti-monopoly statute, and numerous others that might be mentioned, are valid, even when applied to transactions involving interstate commerce? And all such statutes directly place restrictions upon the creation of contracts.

Does the statute before us go so far as to in any manner restrain or impose conditions upon interstate commerce, or contracts pertaining to such commerce? We are unable to see wherein it does. So far as this statute is concerned, corporations, as well as every one else, are left absolutely free to act and contract as they may see fit; but, if they desire at any time to call upon the state to enforce their contracts, or otherwise protect them in what they believe to be their rights, then, to the end that our citizens may be able to be on an equal footing with them, they must place themselves subject to the jurisdiction of all of our courts. Is this not a most reasonable exercise of the police power? If such a statute is not valid in a case such as this, then certainly a statute, such as we have, requiring the filing of a certificate of the names of the copartners in case the partnership name is fictitious, would be invalid as against a contract pertaining to interstate commerce, and this even if such copartnership was a domestic one. Very analogous to the statute before us are those requiring undertakings to be given by non-resident plaintiffs. Are these statutes of force

when an attempt is made to apply them in a case involving an interstate commerce transaction? Certainly they are, and yet they as certainly and directly tend to affect and control interstate commerce as does the statute under consideration.

We can add nothing to the strength of the reasoning found in the words of Justice Fuller in the Farrar Case, or those of the highest court of Kansas, as quoted in the Farrar Case.. Since the decision in the Farrar Case, the Supreme Court of Kansas has again, in Osborne & Co. v. Shilling et al., 74 Kan. 675, 88 Pac. 258, sustained the validity of their statute.

When the courts, state and federal, are a unit in upholding statutes which directly and in almost every conceivable method regulate and control the operation of railroads, the chief instrumentalities for carrying on of interstate commerce; when no court would question the validity, when applied to cases involving interstate commerce, of those numerous statutes designed to protect our people against fraud and oppression, of the other statutes providing the conditions under which (cases involving interstate commerce, as well as in all others) persons, natural and artificial, may gain access to our courts to litigate their rights—can there be the slightest question as to the validity of the statute before us, even when applied to the facts in this case, a statute which, it seems to us, can in no manner affect interstate commerce, and which certainly cannot possibly affect it, except incidentally, and never directly? We think not. The Supreme Court of the United States, in Fritts v. Palmer, 132 U. S. 282, 10 Sup. Ct. 93, 33 L. Ed. 317, said: "There can be no doubt as to the validity of these constitutional and statutory provisions, so far, at least, as they do not directly affect foreign and interstate commerce." Certainly, when there is presented to us for construction a statute so necessary for the protection of our people, we should resolve all doubts, if any there be, as to the validity of the statute in a given case, in favor of our people, at least until such time as the highest court in our land shall decree otherwise.

The judgment of the trial court is affirmed.

McCOY, J., concurs in the result only.

CORSON, J. (dissenting). I am unable to concur in the views expressed in the majority opinion, overruling the decisions of this court in Flint & Walling Mfg. Co. v. McDonald, 21 S. D. 526, 114 N. W. 684, 14 L. R. A. (N. S.) 673, 130 Am. St. Rep. 735; Rex. Buggy Co. v. Dinneen, 23 S. D. 474, 122 N. W. 433; Sioux Remedy Co. v. Lindgren, 27 S. D. 123, 130 N. W. 49. I was of the opinion that after some fluctuation by this court in its decisions the right of a foreign corporation to enforce its interstate contracts, without complying with the law of this state, was at last definitely settled; but it seems in taking this view I am not supported by the majority of the court, though all of the judges seem to have concurred in at least two of the decisions of this court above cited.

These decisions, in my judgment, are sustained by the great weight of authority, as shown by the cases cited in those opinions and by the decision of the Court of Appeals hereinafter referred to. Mr. Justice Sanborn, with whom concurred Mr. Justice Van Devanter, then Circuit Judge, now a member of the United States Supreme Court, and District Judge Phillips, in the case of Butler Bros. Shoe Co. v. U. S. Rubber Co., 156 Fed. 1, 84 C. C. A. 167, in a most exhaustive opinion, reviews the cases upon this subject, and that court held, as appears by the headnote, that: "Every corporation empowered by the state of its creation to engage in interstate commerce may carry on that commerce in sound and recognized articles of commerce in every other state in the Union. Every *prohibition, obstruction,* or *burden* which the other states attempt to impose upon such business is *unconstitutional and void.* * * * Where a corporation of one state is engaged in both interstate and intrastate commerce in any other state, the prohibition or the conditioning by the state of its exercise of its right to do business within its borders, without discriminating between that which constitutes interstate commerce and that which constitutes intrastate commerce is unconstitutional and void, so far as it relates to the former. * * * Interstate commerce in sound and well-recognized articles of commerce *must be free,* and any *prohibition, obstruction,* or *burden of it by a state by any method is unconstitu-*

*tional. Such commerce may not be regulated by a state at all. The exclusive power to regulate commerce among the states is vested in Congress."*

And that learned court in its opinion says: "The review of the decisions of the Supreme Court, relating to the power of a state to trammel or destroy the right of a corporation of another state to do business within its borders, in which we have indulged may have been tedious; but it may be profitable, if it serve to correct the erroneous view that such a corporation has no such right, and that all its powers and privileges without the limits of the state of its creation are at the *mercy* of any state in which it attempts to do business. * * * "

The Constitution of the United States and the acts of Congress in pursuance thereof are the supreme law of the land. Under that Constitution and those laws, a corporation of one state has at least three absolute rights which it may freely exercise in every other state in the Union, without let or hindrance from its legislation or action: (1) Every corporation, empowered to engage in interstate commerce by the state in which it is created, may carry on interstate commerce in every state in the Union, *free* of every prohibition and condition imposed by the latter. * * * Every law of a state which attempts to destroy these rights or to burden their exercise is violative of the Constitution of the United States and void."

And the court in its opinion further says: "Where the Congress has passed no law regulating interstate commerce in well-recognized articles of commerce, that fact is conclusive evidence that it intends such commerce to be free, and any law of a state which prohibits or restrains it *at all* is unconstitutional and void." That learned court further adds: "Many authorities have been examined which relate in some degree to the question which has now been decided. They are numerous, various, and conflicting, and any attempt to reconcile them must fail. The reasons for the conclusion reached have been stated, and some of the authorities examined are here cited for reference"—citing over a half page of authorities.

It would be difficult, in my judgment, for the court to more clearly sustain the three last decisions of this court than is done in that opinion, and with a few immaterial changes it might, in my judgment, be entitled Sioux Remedy Co. v. Lindgren.   The effect of the decision of this court is, as I understand it, practically to review the decision of the Court of Appeals, and to hold in effect that that decision of the Court of Appeals was wrong; and that the state of South Dakota *is empowered* to impose such restrictions as it may deem proper upon the right of a foreign corporation to enforce its contracts against citizens of this state; and that, unless a foreign corporation complies with the provisions of the law of this state, its contracts are unenforceable.

While the decision of the Court of Appeals may not be binding upon this court, it certainly is entitled to great weight, in view of the fact that this state constitutes a part of the Circuit Court of the Eighth Judicial Circuit, and the decision was made by a court having jurisdiction to decide questions involving the Constitution and laws of the United States.   Of course, the United States District Court for this state will follow the decision made by the Court of Appeals; and hence it seems to me to be desirable that the decisions of the Supreme Court of this state should, as far as possible, be in harmony with the decisions of that court.   Had this action been instituted to recover an amount in excess of $2,000 in the United States District Court for this state, and the pleadings and admissions been the same as appears in the record in this case, in my opinion, that court would have considered it its duty to direct a verdict in favor of the plaintiff.

It would seem to me, therefore, to be unwise for this court to overrule three of its own decisions on the construction to be given to our state laws which are fully sustained by the decision of the United States Court of Appeals, and thereby produce a direct conflict between our decisions and that of the Circuit Court of Appeals, especially where it is conceded that the decisions prior to the decision of the Court of Appeals "are in hopeless conflict" (13 Am. & Eng. Enc. of Law, 875; 6 Thompson on Corporations, § 7950), and so much in conflict that the learned Courts of Ap-

peals would not attempt to reconcile them.  It is not surprising, therefore, that this court, in view of the "conflicting" and "irreconcilable decisions" in the earlier cases, was inclined to sustain our state law.  But, upon more full and careful examination of the authorities, I understood we arrived at the same conclusion as that reached by the Circuit Court of Appeals in the Rubber Case, viz., that this state *had no power to impose any conditions or terms upon the right of foreign corporations to enforce interstate contracts as against citizens of this state.*

The question in this case is, not to what extent interstate commerce may be burdened by the laws of this state, but whether or not any burden can be imposed upon that commerce, except in cases involving the sale of intoxicating liquors, which are provided for in what is known as the Wilson bill (Act. Aug. 8, 1890, c. 728, 26 Stat. 313 [U. S. Comp. St. 1901, p. 3177]) and as to purely police regulations.  Clearly there is nothing in the record in this case that takes it out of the ordinary contracts for the sale of sound articles of commerce, and nothing involving the exercise of the police powers of the state.

It will be observed by an examination of the cases of Flint, etc., v. McDonald and Sioux Remedy Co. v. Lindgren, supra, that a large number of decisions were cited to sustain the views expressed in those opinions, and also cases cited in the opinion of Rex Buggy Co. v. Dinneen, supra.  I shall not attempt in this dissenting opinion to review those decisions, but I am confident that they will be found to sustain the views expressed in those cases.  A number of the cases cited in those opinions were cited in the Rubber Case, and some of the quotations made in our opinions were also made by Judge Sanborn in that case.  The Rubber Case was not cited in the McDonald Case, as the opinion in the former case had not been reported at that time.

In my opinion, therefore, the judgment of the circuit court of Turner county, and order denying a new trial, should be reversed.