S. F. BOWSER & COMPANY, Respondent, vs. SCHWARTZ and another, Appellants.

*January 29—February 18, 1913.*

*Sales: Validity: Foreign corporations: Interstate commerce: Warranties: Construction: Breach: Evidence.*

1. A sale by a foreign corporation of goods to be shipped from the place of its domicile to the purchaser in this state, and there installed upon the purchaser's premises, is a transaction of interstate commerce and its validity is not affected by the provisions of sec. 1770*b*, Stats.

2. A warranty, upon the sale of a dry-cleaning outfit, that one pump will take care of the complete operation, pumping to and from any tank, washer, still, or filter, and from washer to washer, is not shown to be breached by mere proof that the pump did not discharge clean or uncontaminated gasoline, following its use for pumping settled or discolored gasoline, without any evidence tending to show the quantity of new or clean gasoline which had passed through it so contaminated.

3. Neither such warranty, nor one against damage in transportation causing the outfit not to work correctly, nor a third against defects in material or workmanship developing within three years, can fairly be construed as an affirmation that the pump would remain without contamination or discoloration in its internal

parts after being used to pump the settled or discolored gaso-
line, or that it would not impart such discoloration to some ex-
tent to new gasoline thereafter passed through it.
4. Where the gasoline tank was placed underground and had re-
movable and adjustable covers, the mere fact that some months
after delivery water was found in the gasoline does not prove
that such covers were not tightly bolted down when the plant
was installed.

APPEAL from a judgment of the circuit court for Douglas
county: FRANK A. ROSS, Circuit Judge. *Affirmed.*

For the appellants there was a brief by *Dietrich & Dietrich,*
and oral argument by *H. W. Dietrich.*

For the respondent there was a brief by *Hanitch & Hartley,*
and oral argument by *C. J. Hartley.*

TIMLIN, J.    In this action for a balance due on notes given
for the purchase price of a clothes-cleaning outfit and extra
tank, a verdict was directed for the plaintiff.    The plaintiff
was a foreign corporation and not licensed to do business in
the state of Wisconsin, but the merchandise in question when
sold was in Indiana, where the plaintiff was domiciled, and
thereafter shipped to the defendants at Superior, Wisconsin,
pursuant to such sale.    The contract was therefore a transac-
tion of interstate commerce and valid notwithstanding the pro-
visions of sec. 1770b, Stats.    *F. A. Patrick & Co. v. De-
schamp,* 145 Wis. 224, 129 N. W. 1096.

Two questions arise, namely: (1) Was there a warranty in
the written contract?    (2) Was there sufficient evidence of a
breach to go to the jury?    The contract is for the purchase of
"1   Power Pump, Cut 250 Semi-Auto Gasoline.
1   Master Trap.
2   Button Traps.
1   2-bbls. L. D. type C, gauge 14, Cut Tank—New Gasoline.
1   2-bbls. H. B. type C, gauge 14, Cut Tank—Distilled Gasoline.
2   3-bbls. H. B. type C, gauge 14, Cut Tank—Settling Gasoline."

with "all necessary valves, piping, unions and fittings to con-
nect up, two washers, still, extractor and scouring table—

All necessary vent pipes and spark arrestor—All excavating and piercing of walls to be done by purchaser—Purchaser also agrees to furnish one helper for our engineer. The above equipment to be completely installed for the sum of seven hundred and eighty dollars. Payable as follows: $39 with order; $141 when installation is complete, and three negotiable notes for $200 each."

"To purchaser: We guarantee all goods of our manufacture to be as represented in our catalogs; and if in transportation they get damaged so they do not work correctly, we will, if the facts are reported to us, make them right without charge, and free of transportation to purchaser. Furthermore, we agree to correct any defects due to imperfect material or workmanship which may develop within three years from date of invoice, making no charge for same.

"S. F. Bowser & Co. Inc."

In the catalogue in evidence occurs the following:

"Bowser's Dry Cleaner's Pumps, Cuts 250 and 251. These pumps are the most rapid in operation made for the use mentioned, they being designed for just such work. . . . The pumps are semi-automatic in operation, they are started by a lever, which can be so arranged as to operate it from any washer, and are stopped automatically when the valve at washer is closed. In this style the pump will be built with a twelve branch header which will be standard and where a smaller tank installation is used, the unused openings will be plugged, thus providing for the extension of the storage system without the need of changing the pump or header."

Also: "The illustration on preceding page shows a complete one pump, six tank equipment. On the right are three tanks for clean gasoline, while on the left are three for settling purposes. Original gasoline is delivered into the 'new' tank. After washing, the dirty gasoline is returned to 'settled' tanks and allowed to settle. Gasoline used especially for rinsing is kept in the 'rinsing' tank, and that which has been put through the still is carried in the 'distilled' tank. This drawing shows the suction lines to the left leading to the pump, the vent pipes on the right, terminating in a double goose-neck above the building, the return drain and the wells over tanks leading to the surface of the ground. One pump takes care of the complete operation, pumping to and from

any tank and any washer, still, filter, and from washer to washer."

It is quite apparent that there is here contained, first, a warranty that the goods are to be as represented in the catalogue, and that the catalogue represents that one pump takes care of the complete operation, pumping to and from any tank and any washer, still, filter, and from washer to washer. The damages for breach of this warranty are not stipulated. and must consist of a money judgment. Another and independent provision of the warranty relates to damages in transportation, and if these damages prevent the appliance from working correctly the remedy is stipulated; that is, if the facts are reported to the seller it will make the goods right without charge and free of transportation. A third independent and additional stipulation, beginning with the word "furthermore," covers defects in the sold article due to imperfect material or workmanship and developing within three years from the date of invoice. In such case .these defects are to be made good by the seller without charge to the purchaser. A two-pump outfit is also offered in the same catalogue, one of the pumps handling the clean gasoline and the other the gasoline from the settling tanks contaminated by former use. A complete outfit of tanks with one pump contains one tank for new gasoline, one distilling tank, one rinsing tank, and three settling tanks. The defendants purchased by their first contract above quoted only four tanks, cutting out entirely the rinsing tank and one of the settling tanks. An additional tank was purchased from the respondent later, but we are not informed what this latter tank was for. The outfit purchased seems appropriate for the cleaning of colored garments because of the impossibility of pumping the new gasoline or gasoline used for the first time except through the same pump which must be used for pumping the discolored or contaminated gasoline from the settling tanks to the other washers.

The defendants offered evidence tending to show that when

the fresh gasoline was pumped from the new gasoline tank to the washer it became, in the process of pumping, contaminated or discolored. They did not show why, but manifestly this was caused by passing through the pump which had theretofore been used for pumping the contaminated or discolored gasoline. The dirty or contaminated gasoline cannot be used for cleaning white or light-colored garments or laces. The harmful result to this class of goods could have been obviated, first, by taking the two-pump plant, second, by using the plant purchased only for the purpose of cleaning colored clothes, and third, perhaps, by some waste of new or clean gasoline passing through the single pump for a considerable time before pumping this grade of gasoline into the washer containing the white or light-colored garments. The appellants attempted to show a breach of warranty by offering evidence tending to show that the pump did not discharge clean or uncontaminated gasoline after it had been used for pumping the settled or discolored gasoline and without any evidence tending to show the quantity of new or clean gasoline which had passed through the pump discolored. The nearest approach to this last was one question to which objection was sustained and which inquired whether, after having used the pump on settled gasoline, the defendants tried to rinse it out and then pump clean gasoline. This does not cover the point in question, because unaccompanied with any other question or offer of evidence covering the effect of such experiment. The evidence offered did not tend to show a breach of either of the three warranties mentioned. Neither of these can be fairly construed as an affirmation that the pump would remain without contamination or discoloration in its internal parts after it had been used to pump this settled gasoline, or an affirmation that it would not impart this discoloration or some of it to the new gasoline thereafter passing through the pump. On the contrary, that this very thing would happen to a greater or less extent must have been quite apparent to any one purchasing the outfit in question. In-

dependently of the foregoing, the appellants offered evidence, tending to show that several months after the installation of this plant at their place in the city of Superior water had entered some of the tanks which were buried in the ground because one or more of the covers on manholes in the top of said tanks was not tightly bolted down. These covers were to enable any person to go in and clean the tanks out and were removable and adjustable. By reason of this the gasoline became mixed with water and was pumped into the washer, and certain clothing intrusted to the appellants for cleaning was thereby damaged, in consequence of which the appellants were obliged to pay to the owners of said clothing several hundred dollars. This defect in installation is not covered by either of the warranties above mentioned, but it is claimed that the respondent, having undertaken to install the plant, did so negligently, and that by reason of such negligence the appellants suffered the damages mentioned. But this evidence falls short also of establishing a counterclaim against the respondent for negligence, because it merely tends to show that the respondent installed the tanks several months before, that thereafter water was found in the tanks, and that this got in because the cap or cover on the manhole was not bolted down tight at the time the water got in. The covers being movable and adjustable, there is no presumption that they were in this condition at the time of installation. If these facts were supplemented by evidence tending to show that no person had loosened or interfered with these covers since their installation, or that the respondent did not properly or carefully fasten down these covers in the first place, a case would have been made for the jury on this counterclaim. But there is no such evidence.

No other question seems to deserve notice. It follows that the circuit court was right in directing a verdict for plaintiff, and the judgment must be affirmed.

*By the Court.*—Judgment affirmed.