S. F. BOWSER & COMPANY, Respondent, vs. SAVIDUSKY and another, Appellants.

*May 2—May 31, 1913.*

*Foreign corporations: Sales: Validity: Interstate commerce: Warranty of "goods:" Assembled plant: Breach: Evidence.*

1. The fact that machinery sold by a foreign corporation is to be assembled and installed by the vendor upon the premises of the vendee after being shipped into this state, does not deprive the transaction of its character of interstate commerce; and notes given for the price of such machinery are not void because of the vendor's failure to comply with sec. 1770*b*, Stats.
2. Where a dry-cleaning outfit consisted of a number of separate parts designed to form and be operated as a complete whole, to be assembled and installed by the seller upon the premises of the buyer, ready for use, a guaranty that the "goods" would remain in perfect order for a given length of time must be construed as a guaranty that such completed plant of which they formed constituent parts would remain in perfect order, under proper use.
3. In an action for the purchase price of a dry-cleaning outfit guaranteed to work properly and to remain in perfect order for three years, evidence that from the beginning the plant leaked gasoline to the extent of seventy-five or eighty gallons a week, that the valves and filter leaked, that the pump never worked right, that part of the time no gasoline could be obtained from

the tank, that the washers were of improper material, and that the connections and construction were such that dirty gasoline could not be forced out through the filter but would run into the clear gasoline tank, is *held* sufficient to take the case to the jury upon the question of a breach of the warranty.

4. In an action for damages for breach of warranty that a machine or plant shall remain in perfect order, evidence that it does not operate properly, that it cannot be made to do so, and that the pipes and connections are defective and leaky, is competent.

5. Reasonable latitude must be allowed, in such a case, in the admission of evidence of defects, especially when it comes from nonexperts who cannot readily, if at all, specify the particulars in which the machinery is out of repair or tell wherein the trouble lies; and this is especially true of complicated or unusual machines or complex plants in which the parts are difficult of inspection.

APPEAL from a judgment of the circuit court for Eau Claire county: E. C. HIGBEE, Judge. *Reversed.*

Action upon five promissory notes given by defendants for the purchase price of a dry-cleaning outfit sold them by the plaintiff, which was a foreign corporation that had not complied with the provisions of sec. 1770*b*, Stats., so as to entitle it to transact business in this state. The answer alleged the invalidity of the notes by reason of the failure of the plaintiff to comply with the statute, and pleaded as a further answer and by way of counterclaim a breach of warranty in the outfit sold, in that it was utterly worthless and unfit for the purpose it was intended to accomplish; that plaintiff's special warranty incorporated into the contract of sale was: "We guarantee all our goods as represented in our catalogue, and if in transportation they get damaged so that they do not work correctly, report to us and we will make them right without charge and free of cost to you. Furthermore, we guarantee them to remain in perfect order for three years from the date of invoice." Defendants further alleged that said machinery, when and after the same was installed in defendants' building, was not as represented in plaintiff's catalogue, and that

plaintiff failed and neglected and refused and has at all times failed and refused to comply with the terms of said warranty by failing and neglecting to keep said machinery in perfect order for the term of three years from the time of said invoice or for any time whatever after the same was installed in defendants' building; that at no time after the installation of said machinery did it remain in perfect order or in such order that the same could be operated by defendants without great damage and injury to them, although the defendants exercised due care and skill in attempting to operate the same. It is further alleged that the defendants relied upon the terms of the warranty in making the contract and were induced thereby to make the same. Appropriate allegations as to special damages sustained by the defendants by reason of the worthlessness and insufficiency of the outfit were also contained in the counterclaim. At the conclusion of the trial the court directed a verdict for the plaintiff for the amount due on the notes, with costs, and from a judgment entered in its favor defendants appealed. .

For the appellants the cause was submitted on the brief of *Sturdevant & Farr.* To the point that the contract was void for noncompliance with sec. 1770*b,* Stats., they cited *Allen v. Milwaukee,* 128 Wis. 678, 106 N. W. 1099; *Diamond G. Co. v. U. S. G. Co.* 187 U. S. 611, 23 Sup. Ct. 206; *Portland Co. v. Hall & G. C. Co.* 121 App. Div. 779, 106 N. Y. Supp. 649; *American A. Co. v. East Lakes C. Co.* (Ala.) 56 South. 961; *Ft. Worth G. & S. Co. v. S. R. Smythe Co.* (Tex. Civ. App.) 128 S. W. 1136; *Hastings I. Co. v. Moran,* 143 Mich. 679, 107 N. W. 706.

For the respondent there was a brief by *A. J. Sutherland,* attorney, and *Miller, Gorham & Wales,* of counsel, and oral argument by *Mr. Sutherland.*

VINJE, J. The contention that the notes are void because of the failure of the plaintiff to comply with the requirements

of sec. 1770*b*, Stats., must be held to be untenable, under the decision of *S. F. Bowser & Co. v. Schwartz,* 152 Wis. 408, 140 N. W. 51. In that case, as in this, there was a provision in the contract of sale for installation by the plaintiff, and the machinery was by it assembled and installed in this state after it was shipped into it from Indiana where it was at the time of the sale. Such assembling and installation are mere incidents to the sale and the transaction does not thereby lose its character of interstate commerce. *Milan M. & M. Co. v. Gorton,* 93 Tenn. 590, 27 S. W. 971, 26 L. R. A. 135; *Wolff D. Co. v. Bigler,* 192 Pa. St. 466, 43 Atl. 1092.

In *S. F. Bowser & Co. v. Schwartz, supra,* the warranty read: "We guarantee all goods of our manufacture to be as represented in our catalogues. . . . Furthermore, we agree to correct any defects due to imperfect material or workmanship which may develop within three years from date of invoice, making no charge for same;" and it was held that the evidence offered did not tend to show a breach of the warranty, for reasons stated in the opinion. The warranty in this case is quite different, and the evidence offered and excluded differs from that of the former case. The warranty here is: "We guarantee all our goods as represented in our catalogue. . . . Furthermore we guarantee them to remain in perfect order for three years from date of invoice." Defendants purchased a dry-cleaning outfit consisting of gasoline storage tanks, one centrifugal pump, filter, three traps, one distilling tank, valves, piping and connections to be installed by plaintiff in their place of business in Eau Claire. As stated by counsel for plaintiff, "It would have been impossible for plaintiff to have shipped to Eau Claire a complete machine ready for operation." But that is what defendants bought and agreed to pay for. They did not buy a dismembered plant. They were entitled under their contract of purchase and the warranty therein contained to an installed plant which, properly operated, would remain in perfect order for three years. The

word *goods* in the warranty, taken in connection with the contract of purchase whereby plaintiff for the price therein named agreed to sell and install the machinery, must be held to relate to the complete plant when installed, and not to the several parts of which it is composed, disconnected from each other. Where the goods sold consist of a number of separate parts designed to form and be operated as a complete whole, to be assembled and installed by the seller ready for use, a guaranty that they will remain in perfect repair for a given length of time must be construed as a guaranty that the plant of which they form the constituent parts will remain in perfect repair, under proper use.   Whether the parts of a plant or machine are assembled at the place where it is to be operated or at the place of manufacture or elsewhere is of no consequence where a complete installed plant is purchased and the goods composing the plant or machine are warranted to remain in perfect repair for a specified length of time.   Therefore under this guaranty it was competent to prove that under proper management the plant became out of repair, without any fault of the defendants, or that it never was made to operate as guaranteed and could not be made to do so.   It is urged that the phrase "three years from date of invoice" negatives such construction because, if the operation of the plant was warranted, it would be absurd to have the warranty begin with the date of invoice.   It would seem to be equally absurd to have it begin with such date under a warranty of the separate parts, for, manifestly, defendants are in no wise interested in the condition of the goods till they are installed and ready for use.   If they are then defective or out of repair it is as much a damage to them as if they had been out of repair or defective from the time they were manufactured.

It seems the trial court construed the contract as merely warranting that the separate parts of the plant would remain in good repair, and not the plant as a whole.   In other words,

that there was no warranty that the plant would operate properly; only that its parts, separately considered, would not become out of repair.

On the part of the defendants there was proof that the plant leaked from seventy-five to eighty gallons of gasoline a week; that the pump never worked right; that valves all leaked; that part of the time defendants could not get gasoline up from the tanks at all; that the machines leaked in their connections with the system; that the filter leaked; that there were about thirty unions fitted with rawhide washers; that such washers will not hold gasoline; that only brass unions will do so; that the tank connections were constructed in such a manner that if one tank got full of dirty gasoline it could run into the clear gasoline tank, on account of there being no valve to cut it off; that there was no cut-off between the pump and the washers, and that there was no cut-off by which the dirty gasoline could be forced out through the filter.

Notwithstanding such evidence of defects in the plant, the court directed a verdict for the plaintiff. This was error. There was sufficient proof to go to the jury upon the question of the breach of the warranty in the contract of sale.

The court also erroneously excluded evidence tending to show that the plant was out of repair and could not be made to operate properly. Thus, in answer to question by the court, "Where was it that it leaked?" one of the defendants testified, "Well, the elbows and joints and filter, and the machine. There was no way it could be shut off from the tanks. The pipes were always full of gasoline. . . . It leaked whether you pumped or not. The storage tanks were under ground. Where it leaked was above the level of the tanks." The answer was stricken out. The record discloses a number of instances where similar evidence was excluded. In an action for damages for breach of warranty that a machine or plant shall remain in perfect order, evidence that it does not prop-

erly operate, that it cannot be made to do so, and that it is out of repair and defective, is competent. Reasonable latitude in the admission of such evidence must be allowed, especially when it comes from nonexperts who cannot so readily, if at all, specify the particulars in which it is out of repair, or be able to tell wherein the trouble lies. This is especially true of complicated or unusual machines or complex plants, many of whose parts are where they cannot easily, or at all, be inspected. ·

*By the Court.*—Judgment reversed, and cause remanded for a new trial.